## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WATERS, individually and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>ADVENT PRODUCT DEVELOPMENT, INC., a South Carolina Corporation, DENICE THURLOW, ALPHONSO EILAND, and DOES 1 through 50, inclusive,<br><br>        Defendants. | Civil Action No.: 07-cv-2089 (BTM)(LSP)<br><br>**Document Electronically Filed.**<br><br>*Oral Argument Requested.*<br><br>Motion Date: December 28, 2007 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ADVENT PRODUCT DEVELOPMENT, INC., DENICE THURLOW, AND ALPHONSO EILAND'S MOTION TO DISMISS THIS ACTION PURSUANT TO THE PARTIES' FORUM SELECTION CLAUSE AND DUE TO AN ALREADY PENDING ACTION**

**BLANCHARD, KRASNER & FRENCH**
800 Silverado Street, Second Floor
La Jolla, California 92037
(858) 551-2440

Of Counsel:
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310

*Attorneys for Defendants*
*Advent Product Development, Inc.,*
*Denice Thurlow and Alphonso Eiland*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................................ii

PRELIMINARY STATEMENT .........................................................................1

FACTUAL BACKGROUND............................................................................ 2

LEGAL ARGUMENT ......................................................................................... 5

I.     THIS ACTION MUST BE DISMISSED PURSUANT TO RULE
12(b)(3) AND THE FORUM SELECTION CLAUSE IN THE
PARTIES' AGREEMENT ..................................................................... 5

     A.     The Governing Legal Standards................................................. 5

     B.     Application of a Forum Selection Clause in a Class Action. ..............7

     C.     The Forum Selection Clause is Reasonable ..........................................7

          1.     The Forum Selection Clause is Not the Result of Fraud
or Overreaching by the Defendants......................................... 8

          2.     South Carolina is Not Such an Inconvenient Forum
that Plaintiff will be Deprived of His Day in Court. ............10

          3.     There is No Strong Overriding Public Policy in
California Warranting that the Agreed Upon Forum
Selection Clause not be Enforced. ...........................................11

               a.     The Representation Agreement is Not Void and
Unenforceable, Since Advent Made All of the
Required Disclosures Pursuant to the
Invention Development Services Contracts............. 12

               b.     Enforcement of the Forum Selection Clause
Will Not Substantially Diminish Plaintiff's
Rights so as to Violate a Public Policy set forth
in the Consumer Legal Remedies Act ....................... 13

     D.     The Forum Selection Clause Applies to the Present Dispute
because Plaintiff's Claims Arise out of the Representation
Agreement...............................................................................................15

II.     THIS COURT SHOULD ABSTAIN FROM HEARING THIS
ACTION PURSUANT TO THE COLORADO RIVER DOCTRINE............. 16

     A.     SOUTH CAROLINA IS A CONVENIENT FORUM..........................17

     B.     AVOIDANCE OF PIECEMEAL LITIGATION ................................. 18

     C.     FIRST FILED ACTIONS ARE FAVORED ........................................ 19

- i -

# TABLE OF CONTENTS
(continued)

**Page**

D.    WHETHER FEDERAL OR STATE LAW APPLIES AND THE ADEQUACY OF THE STATE FORUM TO PROTECT THE RIGHTS OF THE NONMOVING PARTY.......................................... 19

E.    FORUM SHOPPING IS DISCOURAGED ......................................... 20

F.    THE FACTORS WEIGH IN FAVOR OF ABSTENTION AND DISMISSAL OF THIS ACTION. ....................................................... 20

CONCLUSION ................................................................................................. 21

#1243304v2
107136-60464

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Abend v. City of Oakland,
  2007 WL 627916 (N.D. Cal. Feb. 26, 2007) ................................................................17, 18

America Online, Inc. v. Super. Ct.,
  90 Cal. App. 4th 1 (2001) ........................................................................................ 13, 14

American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.,
  843 F.2d 1253 (9th Cir. 1988) ........................................................................................17

Angelotti v. RW Professional Leasing Servs. Corp.,
  1996 U.S. Dist. LEXIS 33387 (9th Cir. Dec. 19, 1996)............................................8, 9, 10

Argueta v. Banco Mexicano, S.A.,
  87 F.3d 320 (9th Cir. 1996) ...................................................................................... 5, 10

Bremen v. Zapata Off-Shore Co.,
  407 U.S. 1 (1972) ..............................................................................................5, 7, 8, 10

Brillhart v. Excess Insurance Co.,
  316 U.S. 491 (1942)..................................................................................................... 19

Carnival Cruise Lines, Inc. v. Shute,
  499 U.S. 585 (1991).......................................................................................................9

Colorado River Water Conservation District. v. United States,
  424 U.S. 800 (1976)............................................................................................... passim

Crescent Int'l, Inc. v. Avatar Communities, Inc.,
  857 F.2d 943 (3d Cir. 1988) ............................................................................................9

Docksider, Ltd. v. Sea Technology, Ltd.,
  875 F.2d 762 (9th Cir. 1989) ...........................................................................................7

Flores v. Superior Court of Los Angeles Cty.,
  2003 WL 22963075 (Cal. App. 2 Dist. Dec. 17, 2003) .................................................. 12

Harman v. Forssenius,
  380 U.S. 528 (1965)...................................................................................................... 16

Hill v. Pacific Gas and Elect. Co.,
  1995 U.S. Dist. LEXIS 2418 (N.D. Cal. Feb. 21, 1995)....................................................9

#1243304v2
107136-60464

Ingenieria Alimentaria Del Matatipac, S.A. v. Ocean Garden Products, Inc.,
  2007 U.S. Dist. LEXIS 40015 (S.D. Cal. May 31, 2007)................................................5, 7

Jones v. GNC Franchising, Inc.,
  211 F.3d 495 (S.D. Cal. 2006) .......................................................................................11

Landis v. North American Co.,
  299 U.S. 248 (1936) .......................................................................................................15

Leyva v. Certified Grocers of California, Ltd.,
  593 F.2d 857 (9th Cir. 1997) .........................................................................................14

Mathews v. Rescuecom Corp.,
  2006 U.S. Dist. LEXIS 8608 (D.N.J. February 16, 2006) ................................................7

Minorplanet Systems USA Ltd. v. American Aire, Inc.,
  628 S.E.2d 43 (S.C. 2006) ...............................................................................................5

Moses H. Cone Hospital v. Mercury Construction, 460 U.S. 1 (1983) .................17, 18, 19

Murphy v. Schneider International Inc.,
  362 F.3d 1133 (9th Cir. 2003) ......................................................................................7, 9

Nakash v. Marciano,
  882 F.2d 1411 (9th Cir. 1989) ...................................................................................16, 18

Nextrade, Inc. v. Hyosung (America), Inc.,
  122 Fed. Appx. 892 (9th Cir. 2005)............................................................................13, 15

Nizam's Institute of Medical Sciences v. Exchange Technologies, Inc.,
  1994 U.S. Dist. LEXIS 16552 (4th Cir. July 5, 1994).......................................................6

Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines, Inc.,
  69 F.3d 1034 (9th Cir. 1995)............................................................................................7

Nurea Ink, LLC v. Zomba Recording, LLC,
  2006 U.S. Dist. LEXIS 87240 (S.D. Cal. Nov. 29, 2006) .................................5, 7, 10, 15

Nureau Ink, LLC v. Zomba Recording, LLC,
  2006 U.S. Dist. LEXIS 87240 (S.D. Cal. Nov. 29, 2006) .....................................5, 7, 10

Oestreicher v. Alienware Corp.,
  502 F. Supp. 2d 1061 (N.D. Cal. 2007) ..........................................................................14

Offshore Sportswear, Inc. v. Vuarnet International, B.V.,
  114 F.3d 848 (9th Cir. 1997) ...........................................................................................8

#1243304 v2
107136-60464

Pappalardo v. Advent Prod. Dev.,
   2007 U.S. Dist. LEXIS 31572 (D.N.J. April 30, 2007)....................................................2, 3

Pelleport Investors, Inc. v. Budco Quality Theaters, Inc.,
   741 F.2d 273 (9th Cir. 1984) ...................................................................................10

Popescu v. 4Access Communications, Inc.,
   2007 U.S. Dist. LEXIS 21822 (S.D. Cal. Mar. 26, 2007)...........................................15

Puck v. WP Pacific, Inc.,
   2007 WL 2315952 (C.D. Cal. Jan. 17, 2007) ..........................................................17

Richards v. Lloyd's of London,
   135 F.3d 1289 (9th Cir. 1998) ...................................................................................8

Smith v. Superior Court of Los Angeles Cty.,
   17 Cal. 3d 491 (1976)...............................................................................................5

Speyer v. Avis Rent a Car System, Inc.,
   415 F. Supp. 2d 1090 (S.D. Cal. 2005)......................................................................7

St. Paul Fire & Marine Ins. Co. v. Nonprofits United,
   91 Fed. Appx. 537 (9th Cir. 2004) ..........................................................................19

Swenson v. T-Mobile United States, Inc.,
   415 F. Supp. 2d 1101 (S.D. Cal. Jan. 25, 2006) .....................................................11

Travelers Indem. Co. v. Madonna,
   914 F.2d 1364 (9th Cir. 1990)..................................................................................17

Waterbury v. Safeway, Inc.,
   2006 WL 3147687 (N.D. Cal. Oct. 31, 2006) ....................................................18, 19

## **Statutes**

28 U.S.C. § 1332(d) ........................................................................................................4

35 U.S.C. § 297 (2007) ..................................................................................................14

## **Other Authorities**

Cal. Bus. & Prof. Code § 22380 (2007)..........................................................................12

Cal. Bus. & Prof. Code § 22384 (2007)..........................................................................12

Cal. Civ. Code § 1751 (2007) ........................................................................................13

S.C. Code § 39-5-10 *et seq.* (2007)...............................................................................14

#1243304v2
107136-60464

## **Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 8

Rule 12(b)(3) ........................................................................................................................ 1, 5

#1243304v2
107136-60464

## **PRELIMINARY STATEMENT**

Defendants Advent Product Development, Inc. ("Advent"), Denice Thurlow ("Thurlow"), and Alphonso Eiland ("Eiland") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss this action.

This Court is not the proper forum for this dispute. Pursuant to the Representation Agreement (as defined *infra*) between plaintiff Matthew Waters ("Waters" or "Plaintiff") and Advent, any disputes between Waters and Advent must be resolved before a South Carolina court. Accordingly, when it became apparent that this dispute would ripen into litigation, Advent filed a declaratory judgment action against Waters in South Carolina seeking to enforce Waters' contractual obligations. In an apparent attempt to avoid the jurisdiction of the South Carolina Court, Waters filed this action. The Defendants respectfully submit that this action must be dismissed pursuant to Rule 12(b)(3) and the forum selection clause to which Plaintiff expressly agreed, and to honor the first-filed, pending action in South Carolina.

The forum selection clause to which Waters and Advent agreed applies to all of Waters' claims is reasonable. It was not the result of fraud or overreaching, and Waters' general fraud allegations do not affect the enforceability of the forum selection clause. Moreover, South Carolina is not such a remote forum that Waters will be deprived of his day in court. Waters has already retained counsel and filed an Answer in the South Carolina action in which he wholly fails to allege that South Carolina is an improper or inconvenient venue. Nor is the forum selection clause void as against public policy, including under either the California Business and Professions Code or the Consumer Legal Remedies Act. At all times Advent complied with the requirements of California

1

law, and Waters' remedies under the South Carolina Unfair Trade Practices Act and the American Inventor's Protection Act are not such that his rights in South Carolina will be substantially diminished.

This is not the first time a Federal Court has had the opportunity to review Advent's forum selection clause. In a similar action brought recently by two plaintiffs in New Jersey, the United States District Court for the District of New Jersey determined that the same forum selection clause to which Waters agreed is valid and enforceable. See Pappalardo v. Advent Prod. Dev., 2007 U.S. Dist. LEXIS 31572 (D.N.J. April 30, 2007) (attached hereto as "Exhibit A"). The New Jersey Court found unambiguously that "the plain language [of the forum selection clause] makes it clear that 'South Carolina ... shall be the appropriate venue for any action.'" Id. at 11. In reaching this conclusion, the New Jersey Court also found that the clause was not "fraught with the kind of legalese that would be incomprehensible to a person without a legal background." Id. at 9.

Lastly, it is respectfully submitted that this action is further dismissible because of the ongoing parallel action in South Carolina. In accordance with the Supreme Court's decision in Colorado River Water Conservation District. v. United States, 424 U.S. 800, 817 (1976), it is in this Court's best interest to abstain from hearing this dispute since it is already properly before the South Carolina court.

## FACTUAL BACKGROUND

Advent is a marketing company that assists new inventors with bringing their ideas to market. Prior to providing any services, Advent enters into appropriate agreements outlining the roles and responsibilities of each party and makes all

2

disclosures required by California law, including those it is required to make in its advertisements. (Thurlow Decl., Ex. 1-6).

**The Forum Selection Clause**

On April 6, 2006, Waters and Advent entered into a limited "Phase I" agreement (the "Product Profile Agreement"), under which Advent was to provide Plaintiff with a "Product Profile Report." (Thurlow Decl., Ex. 1-2). At this same time, Waters was also given a copy of Advent's Services Pricing Sheet and General Terms regarding Advent's representation. (Thurlow Decl. ¶ 3 and Ex. 3).

Waters and Advent next entered into a "Phase II" agreement (the "Representation Agreement"). (Thurlow Decl., Ex. 4-5). Pursuant to the Representation Agreement, Waters and Advent expressly agreed as follows:

> [This Representation] Agreement shall be governed by and interpreted according to the laws of the State of South Carolina, which Client [Waters] hereby agrees shall be the appropriate venue for any action, and Client [Waters] submits to the personal jurisdiction thereof.

Id. Notably, in Pappalarado et al. v. Advent Product Development, Inc. et al., Civil Action No. 1:06-cv-04697, 2007 U.S. Dist. LEXIS 31572 (D.N.J. April 30, 2007), the Honorable Renee Marie Bumb held that the very same forum selection clause is valid and enforceable and enforced it against another party with whom Advent had entered into an agreement. Judge Bumb's April 30, 2007 studied opinion on this issue is attached hereto as Exhibit A.

**The Prior, Pending South Carolina Action**

By letter dated July 16, 2007 (*i.e.*, prior to the commencement of this class action), Waters, by his counsel, made certain demands of Advent and threatened to file an action against Advent absent its compliance with such demands. On August 14,

3

2007, Advent, having a reasonable apprehension of suit, filed a complaint against Waters in the Court of Common Pleas in the State of South Carolina seeking to enjoin Waters from breaching the Representation Agreement's forum selection clause and to declare Advent's rights under the same agreement. (Williams Decl., Ex. 1). Waters retained South Carolina counsel, who entered an appearance and filed an Answer on September 20, 2007 (the "South Carolina Answer"). (Williams Decl., Ex 2). Waters does not contest personal jurisdiction or suggest that South Carolina is an improper or inconvenient venue in his South Carolina Answer. See id.

Despite his manifest intention to litigate this dispute in South Carolina, Waters -- in contravention of the controlling forum selection clause and in disregard for the related, first-filed South Carolina action -- filed this class action on September 18, 2007 in the Superior Court of the State of California.[1] (Not. Removal, Docket Entry 1, Exhibit A, Complaint, S.D. Cal. Civil Action No. 3:07-cv-2089 (Oct 31, 2007), hereinafter, the "Complaint" or "Compl."). Although Waters was required to disclose the First-Filed South Carolina Action on his California civil cover sheet, he elected not to do so. (Not. Removal, Docket Entry 1, Exhibit A, Civil Cover Sheet, S.D. Cal. Civil Action No. 3:07-cv-2089 (Oct 31, 2007)).

---

[1] This action has since been removed to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(d). (Not. Removal, Docket Entry 1, S.D. Cal. Civil Action No. 3:07-cv-2089 (Oct. 31, 2007)).

4

## LEGAL ARGUMENT

I.  **THIS ACTION MUST BE DISMISSED PURSUANT TO RULE 12(B)(3) AND THE FORUM SELECTION CLAUSE IN THE PARTIES' AGREEMENT.**

    A.  **The Governing Legal Standards.**

Rule 12(b)(3) of the Federal Rules of Civil Procedure ("Rule 12(b)(3)") is the appropriate procedural mechanism to invoke in seeking dismissal of an action for non-compliance with a forum selection clause.  See Ingenieria Alimentaria Del Matatipac, S.A. v. Ocean Garden Products, Inc., 2007 U.S. Dist. LEXIS 40015, at *4 (S.D. Cal. May 31, 2007); citing Argueta, 87 F.3d at 324 (9th Cir. 1996).  In considering a motion pursuant to Rule 12(b)(3), the court is not required to accept as true "all reasonable inferences and resolve all factual conflicts in favor of the party seeking to avoid enforcement of the clause."  Nureau Ink, LLC v. Zomba Recording, LLC, 2006 U.S. Dist. LEXIS 87240, at * (S.D. Cal. Nov. 29, 2006); citation omitted.  A court may even consider matters outside the pleadings if necessary.  See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).

In a diversity case, such as this one, "federal law governs the analysis of the effect and scope of forum selection clauses."  Ingenieria Alimentaria Del Matatipac, S.A. v. Ocean Garden Products, Inc., 2007 U.S. Dist LEXIS 40015, at *5-6 (S.D. Cal. May 31, 2007).  Courts in both California and South Carolina look favorably upon forum selection clauses and follow the United States Supreme Court's decision in The Bremen et al. v. Zapata Off-Shore Co., 407 U.S. 1 (1972).  See Smith v. Superior Court of Los Angeles Cty., 17 Cal. 3d 491, 495 (1976) ("we are in accord with the modern trend which favors enforceability of such forum selection clauses"); Minorplanet Systems USA Ltd. v. American Aire, Inc., 628 S.E.2d 43, 45 (S.C. 2006) (a party's consent to jurisdiction is

#1243304 v2
107136-60464

presumptively valid and enforceable); <u>Nizam's Institute of Medical Sciences v. Exchange Technologies, Inc.</u>, 1994 U.S. Dist. LEXIS 16552, at *8-9 (4th Cir. July 5, 1994) (a forum selection clause is enforceable pursuant to <u>Bremen</u> and finds that a party "must bear the consequences of the contract that it signed").  Thus, here, the Court need not engage in a choice of law analysis, because the same result would obtain under California and South Carolina law.

Absent a conflict of law, interpretation of a forum selection clause is to be governed by the standard laid out in <u>Bremen</u>.  <u>See</u> <u>Bremen</u>, 407 U.S. 1.  In <u>Bremen</u>, the Supreme Court held that a forum selection clause should be freely enforced absent fraud, undue influence, overweening bargaining power, or contravention of a strong public policy of the forum in which the suit is brought.  <u>Id.</u> at 11-15.  The United States Supreme Court has required a strong showing to set aside a forum selection clause, which is considered to be *prima facie* valid and enforceable unless shown to be unreasonable under the circumstances.  <u>Bremen</u>, 407 U.S. at 10-13.

The forum selection clause was intended to dispel any confusion about where suits should be litigated, thereby sparing litigants the time and expense of litigating the very issue that is the subject of this application -- where the case should proceed.  South Carolina is the state of Advent's principal place of business.  It is also where most of the decisions giving rise to the present dispute took place, and where most of the witnesses are located.

It is respectfully submitted that this action must be dismissed in light of the mandatory and enforceable forum selection clause that is part and parcel of the parties' Representation Agreement and which encompasses all of the claims in Waters' Complaint.  The forum selection clause in the Representation Agreement is mandatory

6

because it uses the word "shall" when referring to venue, making clear that jurisdiction in South Carolina is exclusive.  See Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines, Inc., 69 F.3d 1034, 1036-37 (9th Cir. 1995); see also Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir. 1989) (when "venue is specified with mandatory language the clause will be enforced.").

### B.    Application of a Forum Selection Clause in a Class Action.

When a party seeks to enforce a forum selection clause in a class action, the court must first determine whether the forum selection clause applies to only the named plaintiff prior to certification of the class.  Speyer v. Avis Rent a Car System, Inc., 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005).  Waters, the only named plaintiff in this action, executed the Representation Agreement.  (Thurlow Decl., Ex. 5).  As such, this forum selection clause applies to him and this Court should dismiss this action.

### C.    The Forum Selection Clause is Reasonable.

Forum selection clauses are routinely upheld by the Supreme Court, the Ninth Circuit and this Court.  See Nureau Ink, LLC v. Zomba Recording, LLC, 2006 U.S. Dist. LEXIS 87240, at *20 (S.D. Cal. Nov. 29, 2006) (stating that forum selection clauses "are presumptively valid and are honored absent some compelling and countervailing reason"); see also Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9-10 (1972); Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. Mar. 22, 2004).  In opposing the enforcement of the forum selection clause in the Representation Agreement, Waters "has a 'heavy burden of  proof' and must 'clearly show that enforcement would be unreasonable and unjust ....'"  Ingenieria Alimentaria v. Ocean Garden Products, Inc., 2007 U.S. Dist. LEXIS 40015, at *7 (S.D. Cal. May 31, 2007).

7

Forum selection clauses are *prima facie* valid and will be enforced so long as the clause is reasonable.  <u>Bremen</u>, 407 U.S. at 10.  A forum selection clause may be deemed unreasonable where (1) the clause was the result of fraud or overreaching, (2) enforcement of the clause would be seriously inconvenient for trial or (3) enforcement of the clause would violate a strong public policy.  <u>See</u> <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1294 (9th Cir. 1998) (<u>citing</u> <u>Bremen</u>, 407 U.S. at 12-13, 15).  Absent a showing of unreasonableness, a court will enforce a forum selection clause which is mandatory and encompasses all of the claims of an action pursuant to Fed. R. Civ. P. 12(b)(3).

Here, as is detailed below, Waters cannot establish that the forum selection clause in the Representation Agreement is unreasonable.  Accordingly, he cannot avoid the forum selection clause, and it should be enforced.

### 1.    The Forum Selection Clause is Not the Result of Fraud or Overreaching by the Defendants.

General allegations that Waters was induced to enter into the Representation Agreement as a result of the Defendants' alleged fraud or overreaching are insufficient to enable Waters to avoid the forum selection clause.  To avoid the forum selection clause, Waters must prove that his agreement to the forum selection clause, in particular, was the result of fraud or overreaching by the Defendants.  <u>See</u> <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1297 (9th Cir. 1998); <u>see</u> <u>also</u> <u>Angelotti v. RW Professional Leasing Servs. Corp.</u>, 1996 U.S. Dist. LEXIS 33387, at *9 (9th Cir. Dec. 19, 1996).  The Ninth Circuit and other federal courts have held that a party claiming fraud in the inducement to signing a contract which contains a forum selection clause will still be subjected to that clause.  <u>See</u> <u>Offshore Sportswear, Inc. v. Vuarnet International, B.V.</u>, 114 F.3d 848, 850 (9th Cir. 1997); <u>Hill v. Pacific Gas and Elect. Co.</u>, 1995 U.S. Dist.

8

LEXIS 2418, at *6-7 (N.D. Cal. Feb. 21, 1995); Crescent Int'l, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988) (rejecting the plaintiff's contention that the forum selection clause in the underlying agreement did not apply to the alleged fraud, unfair competition and tortious interference claims).

Waters cannot make the requisite showing by proving that he was assured the clause is standard, or as a result of any alleged failure to read the Representation Agreement, as parties are expected to read a contract prior to signing it. Angelotti v. RW Professional Leasing Services Corp., 1996 U.S. App. LEXIS 33387, at *8-11 (9th Cir. Dec. 13, 1996). Even where a contract is alleged to have been presented on a "take or leave it" basis, this will not "overcome the strong presumption in favor of enforcing forum selection clauses." Murphy v. Schneider International Inc., 362 F.3d 1133, 1141 (9th Cir. 2003). Neither the absence of negotiations nor a difference in education or power will serve as an adequate basis for invalidating the clause. See id. (refusing to allow a party to avoid a forum selection clause by merely showing non-negotiability and a power difference between the parties because it would disrupt the expectations of the parties) (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)).

Waters cannot carry the heavy burden required to avoid the forum selection clause to which he agreed in the Representation Agreement. Advent did not overreach or use fraud to obtain Waters' assent to the forum selection clause in the Representation Agreement (or any other clause in the Representation Agreement). While Waters may argue that he was fraudulently induced or coerced into entering into the Representation Agreement, that is simply not the standard of proof required to invalidate a forum selection clause.

**2.    South Carolina is Not Such an Inconvenient Forum that Plaintiff will be Deprived of His Day in Court.**

The party opposing the enforcement of a forum selection clause has a "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996) (citing Pelleport Investors, Inc. v. Budco Quality Theaters, Inc., 741 F.2d 273, 281 (9th Cir. 1984) (citing Bremen, 407 U.S. at 18) (citations omitted). Financial hardship alone is insufficient to avoid a forum selection clause on the grounds that enforcement of the same clause will deprive a party of his or her day in court. Nureau Ink, LLC v. Zomba Recording, LLC, 2006 U.S. Dist. LEXIS 87240, at *21 (S.D. Cal. Nov. 29, 2006). Neither is showing that witnesses and experts will have to travel, or that there is an inability to secure a live witness' testimony, sufficient to avoid the enforcement of a forum selection clause. See Angelotti v. RW Professional Leasing Services Corp., 1996 U.S. Dist. LEXIS 33387, at *12 (9th Cir. Dec. 13, 1996).

This Court in Nureau Ink upheld a forum selection clause, holding that the matter was required to be brought before a forum in the State of New York. 2006 U.S. Dist. LEXIS 87240, at *21. The Court was not persuaded by plaintiffs' argument that they would have to fly witnesses to New York and that they themselves were in a poor financial state, when they were actually already litigating the matter in New York. See id.

Here, as with the plaintiffs in Nureau Ink, Waters is already litigating this matter in South Carolina. Indeed, he retained counsel in South Carolina and filed an Answer in which he failed to object to venue and failed to assert that the South Carolina court

10

lacked personal jurisdiction over him. (Williams Decl., Ex. 2). Waters cannot credibly argue that the resolution of this dispute in the South Carolina Court in accordance with the forum selection clause to which he agreed deprives him of his day in court. By signing the Representation Agreement, Plaintiff agreed to bear the risk of being inconvenienced, and South Carolina is not such a remote forum that he will be deprived of his day in court.

### 3.    There is No Strong Overriding Public Policy in California Warranting that the Agreed Upon Forum Selection Clause not be Enforced.

A forum selection clause may be found unreasonable when it violates a strong public policy within the forum state (whether such policy is reflected in a statute or common law). <u>See</u>, <u>e.g.</u>, <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 497 (S.D. Cal. 2006) (finding a forum selection clause invalid pursuant to the California Business and Professions Code Section 20040.5, which specifically prohibits the use of a forum selection clause in franchise agreements when the venue for a litigation is set outside of the state); <u>see also</u> <u>Swenson v. T-Mobile United States, Inc.</u>, 415 F. Supp. 2d 1101, 1104-1105 (S.D. Cal. Jan. 25, 2006).

This action has been brought pursuant to the Consumer Legal Remedies Act ("CLRA") and the California Business and Professions Code, Chapter 17. Neither of these statutes forbid the use of forum selection clauses. Accordingly, it is respectfully submitted that the forum selection clause in the Representation Agreement does not violate public policy.

#1243304 v2
107136-60464

      **a.**    **The Representation Agreement is Not Void
and Unenforceable, Since Advent Made All of
the Required Disclosures Pursuant to the
<u>Invention Development Services Contracts.</u>**

Plaintiff has sought relief under the California Business and Professions Code,
Chapter 17 Invention Development Services Contracts.  In considering whether to void
an invention development services contract, courts look at whether the invention
developer complied with all of the statutory disclosure requirements.  <u>See</u> <u>Flores v.
Superior Court of Los Angeles Cty.</u>, 2003 WL 22963075, *4 (Cal. App. 2 Dist. Dec. 17,
2003).  When an invention developer does not comply with Chapter 17, a contract may
"be void and unenforceable as contrary to public policy, provided that no contract shall
be void and unenforceable if the invention developer proves that noncompliance was
unintentional and resulted from a bona fide error ...."  Cal. Bus. & Prof. Code § 22380
(2007).  A contract for invention development services may also be voided if it was
entered into based on the reliance of a "willful and false, fraudulent, or misleading
representation by the invention developer."  <u>See</u> Cal. Bus. & Prof. Code § 22384 (2007).

Each of the agreements between Waters and Advent -- *i.e.*, the Product Profile
Agreement and the Representation Agreement -- as well as Advent's advertisement
contain all of the disclosures Advent is required to make  pursuant to the California
Business and Professions Code.  (Thurlow Decl., Ex. 1-6).  While Waters vaguely alleges
in his Complaint the Defendants did not comply with certain statutes, he wholly fails to
identify any specific deficiencies.  <u>See</u> Compl. <u>in passim</u>.  It is respectfully submitted that
Waters failed to specify these alleged deficiencies because none exist.

Further, there are simply no facts before this Court to show that Advent made a
willful and false, fraudulent, or misleading representation in either the Product Profile

12

Agreement, the Representation Agreement or otherwise. Similarly, as argued in detail above, Plaintiff cannot avoid the subject forum selection clause by virtue of his general allegations of fraud in the inducement of the Representation Agreement. See Nextrade, Inc. v. Hyosung (America), Inc., 122 Fed. Appx. 892, 894 (9th Cir. 2005).

> **b.    Enforcement of the Forum Selection Clause
> Will Not Substantially Diminish Plaintiff's
> Rights so as to Violate a Public Policy set forth
> in the Consumer Legal Remedies Act.**

The CLRA provides that "[a]ny waiver by a consumer of the provisions of [the CLRA] is contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1751 (2007). However, under California law, a consumer who enters into an agreement with a choice of law provision that provides for the application of the laws of a state other than California, by virtue of such choice of law provision, that consumer waives the rights he would otherwise have as a California consumer to seek relief under the CLRA. See America Online, Inc. v. Super. Ct., 90 Cal. App. 4th 1, 5 (2001).[2] Since California courts favor the enforcement of forum selection clauses, they will enforce such clauses "so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement." Id. at 21.

Both South Carolina law and federal law provide for relief similar to that which would otherwise be available to Waters under the CLRA. Thus, Waters' rights under the CLRA will not be significantly impaired as a result of this Court's enforcement of the forum selection clause and choice of law provisions to which Waters agreed. See id. at 17.

---

[2] Although the America Online Court ultimately voided the forum selection clause and choice of law provision at issue in that action, the facts at bar in that case are distinguishable from the facts in this case. See id.

#1243304 v2
107136-60464

Pursuant to the South Carolina Unfair Trade Practices Act ("SCUTPA"), Waters may be entitled to sufficient relief against Advent. <u>See</u> S.C. Code § 39-5-10 *et seq.* (2007). There is also nothing in the South Carolina statute that will prevent the Plaintiff from filing a class action under SCUTPA. <u>See</u> <u>id.</u>; <u>Oestreicher v. Alienware Corp.</u>, 502 F. Supp. 2d 1061, *at 12-14 (N.D. Cal. 2007); citing <u>America Online, Inc.</u>, 90 Cal. App. 4th at 18 (refusing to enforce a choice of law and forum selection clause because under Virginia law the class action could not proceed resulting in a waiver of this right permitted under the California Consumers Legal Remedies Act).

Waters may also have the right to bring an action for relief under the American Inventor's Protection Act, 35 U.S.C. § 297 (2007), which provides for remedies that are similar to those that would otherwise be available to Waters under California law absent the forum selection and choice of law clause in the Representation Agreement. Therefore, Waters' rights will not be substantially impaired by the enforcement of the forum selection and accompanying choice of law provision since there are comparable remedies to the CLRA available in South Carolina and under federal statutory law.

In the event that this Court finds that the remedies available to Waters under South Carolina and federal law are insufficient to prevent the significant impairment of Waters' substantial rights under the CLRA, it is respectfully submitted that this Court should nevertheless stay this action pending the determination of the South Carolina action. It is within this Court's inherent authority to manage its docket and promote judicial efficiency by staying this second-filed action in order to avoid duplicate litigations, an inefficient use of judicial economy, and inconsistent judgments. <u>See</u> <u>Leyva v. Certified Grocers of California, Ltd.</u>, 593 F.2d 857, 863-64 (9th Cir. 1997) ("[a] trial court may, with propriety, find it is efficient for its own docket and the fairest

14

course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case ...."); <u>see</u> <u>also</u> <u>Landis v. North American Co.</u>, 299 U.S. 248, 254-55 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")).

### D. The Forum Selection Clause Applies to the Present Dispute because Plaintiff's Claims Arise out of the Representation Agreement.

The scope of the parties' forum selection agreement is broad and encompasses all of Waters' claims in this action. In particular, the Representation Agreement provides that the mandatory forum selection clause encompasses all claims "for any action." (Thurlow Decl., Ex. 5).[3] The Ninth Circuit has repeatedly held that a forum selection clause will apply to non-contractual terms when "the claims alleged in the complaint relate to the interpretation of the contract." <u>See</u> <u>Nextrade, Inc.</u>, 122 Fed. Appx. at 894 (9th Cir. 2005) (citations omitted); <u>Popescu v. 4Access Communications, Inc.</u>, 2007 U.S. Dist. LEXIS 21822, at *4 (S.D. Cal. Mar. 26, 2007) (finding that the forum selection clause applies to both contract and tort claims because it requires the court to interpret the contract in order to see if the parties performed in compliance with it). Notably, Judge Bumb held that "the term 'any action' is ... broad enough to encompass the misrepresentations Advent allegedly made prior to the execution of the

---

[3] Any suggestion that the forum selection clause should not be enforced because it is only in the Representation Agreement and not in the earlier signed Product Profile Agreement is inappropriate. As this Court has made clear, if a later executed contract was intended to incorporate all of the earlier contracts therein, the forum selection clause located in the later contract will be enforced. <u>Nurea Ink, LLC v. Zomba Recording, LLC</u>, 2006 U.S. Dist. LEXIS 87240, at *10 (S.D. Cal. Nov. 29, 2006). Here, the forum selection clause in the Representation Agreement specifies that South Carolina is the appropriate venue for <u>any</u> action. (Thurlow Decl., Ex. 5).

15

[Representation] Agreement," and that pleading non-contractual claims does not allow plaintiffs to avoid the forum selection clause. Ex. A, p. 12.

Here, Waters seeks a refund of the money he paid to Advent. The forum selection clause which Waters agreed to is broad enough to encompass "any action" -- including this claim -- and Waters should not be allowed to avoid his contractual obligations by merely claiming fraud in the inducement. See Point I.(B.)(1.), supra.

## II. THIS COURT SHOULD ABSTAIN FROM HEARING THIS ACTION PURSUANT TO THE COLORADO RIVER DOCTRINE.

In the interests of judicial economy and the comprehensive disposition of litigation, the Court should dismiss this action due to the already pending and first-filed action in South Carolina state court. A federal court may abstain from adjudicating a controversy otherwise properly before it when there already exists an ongoing parallel state court action. The determination of whether to abstain is left to the discretion of the district court, and will be set aside on review only if the district court has abused its discretion. Harman v. Forssenius, 380 U.S. 528, 534 (1965).

In accordance with the Supreme Court's ruling in Colorado River Water Conservation District. v. United States, 424 U.S. 800, 817 (1976) (hereinafter "Colorado River"), abstention by a federal court is appropriate where there exists a concurrent and related state court action. The threshold requirement of parallel state and federal actions does not mean that the proceedings must be identical, but rather that they are substantially similar. See Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).

Based upon considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," the Supreme Court in Colorado River determined that abstention was warranted, and

#1243304 v2
107136-60464

therefore dismissed the federal district court action.  Id. at 817.  The Colorado River doctrine is recognized as a means of addressing these practical goals such that the doctrine is "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand."  Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 21 (1983) (hereinafter "Moses H. Cone").

In abstaining from adjudicating a controversy otherwise properly before it, a court should consider the following factors, as set forth by the Supreme Court and the Ninth Circuit.  These factors are:

> (1) which court first assumed jurisdiction over the res in dispute; (2) the relative convenience of the forums; (3) the need to avoid piecemeal litigation; (4) the order in which the state and federal actions were filed; (5) whether state or federal law controls; (6) whether the state proceeding is adequate to protect the parties' rights; and (7) whether the federal court proceeding is an instance of forum shopping.

Puck v. WP Pacific, Inc., 2007 WL 2315952, at *2 (C.D. Cal. Jan. 17, 2007); citing Colorado River, 424 U.S. at 818 (factors 1-4); Moses H. Cone, 460 U.S. at 25-26 (factors 5-6); Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367-68 (9th Cir. 1990) (factor 7).  These factors are not a checklist, but are meant to be a flexible balancing process.  See American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1257 (9th Cir. 1988); quoting Moses H. Cone, 460 U.S. at 16.  As set forth below, an application of these seven factors to the instant matter dictates that abstention is appropriate.

## A.    SOUTH CAROLINA IS A CONVENIENT FORUM

In determining whether abstention is appropriate, the Court will take into account whether the alternative forum is convenient to the nonmoving party.  See Abend v. City of Oakland, 2007 WL 627916, at *4 (N.D. Cal. Feb. 26, 2007).  South

17

Carolina is not a gravely inconvenient forum. Rather, to the contrary, it is the forum to which Waters contractually agreed to for litigating any disputes between the parties. Furthermore, Waters has already filed an answer in the South Carolina action and never raised the issue of the South Carolina forum being inconvenient. See Waterbury v. Safeway, Inc., 2006 WL 3147687, at *2 (N.D. Cal. Oct. 31, 2006) (holding that convenience was not an issue when the defendant never raised the issue of an inconvenient forum in either of its motions that were previously filed with the court). Therefore, convenience of South Carolina should not be an issue for this Court to consider.

### B.    AVOIDANCE OF PIECEMEAL LITIGATION.

In Moses H. Cone, the Supreme Court indicated that "[b]y far the most important factor in its decision to uphold the dismissal of the federal proceedings in Colorado River was the strong federal policy in favor of avoiding piecemeal litigation." 460 U.S. at 16. This requires a court to determine if there is a "'substantial similarity' between the state and federal proceedings, but ... 'exact parallelism ... is not required.'" Abend v. City of Oakland, 2007 WL 627916, at *2 (N.D. Cal. Feb. 26, 2007); citing Nakash, 882 F.2d at 1416.

Here, the first filed action involves similar parties and issues. Not only are Waters and Advent both parties in the two actions, but both litigations involve their contractual agreement, i.e., the Representation Agreement. It is under this agreement that Advent seeks to have its rights declared and enforced, and Waters seeks to recover for Advent's alleged inability to performance under this contractual agreement. Both proceedings are substantially similar requiring that one court adjudicate these issues.

18

### C.    FIRST FILED ACTIONS ARE FAVORED.

Under the Colorado River doctrine, the principle of "wise judicial administration" weighs in favor of abstention where a state court is the first to obtain jurisdiction over the parallel actions. See 424 U.S. at 817. On August 14, 2007, Advent filed a complaint in the Court of Common Pleas in the State of South Carolina which Waters has answered. (Williams Decl., Ex. 1). This action was hereafter filed on September 18, 2007. (Williams Decl., Ex. 2). Clearly, South Carolina obtained jurisdiction over the parallel action first and has progressed further than this action which has just begun. See Waterbury, 2006 WL 3147687, at *3; citing Moses H. Cone, 460 U.S. at 21.

### D.    WHETHER FEDERAL OR STATE LAW APPLIES AND THE ADEQUACY OF THE STATE FORUM TO PROTECT THE RIGHTS OF THE NONMOVING PARTY.

The fifth and sixth factors, regarding the application of state or federal law and adequate protections under the state law, warrant abstention. Federal courts will frequently abstain from adjudicating federal actions in favor of ongoing parallel state courts actions where federal law does not govern the underlying dispute and where, as here, the federal court's jurisdiction is based solely upon diversity of citizenship. See Brillhart v. Excess Insurance Co., 316 U.S. 491, 494-95 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending is a state court presenting the same issues, not governed by federal law, between the same parties."); St. Paul Fire & Marine Ins. Co. v. Nonprofits United, 91 Fed. Appx. 537, 538 (9th Cir. 2004) (affirming the district court's decision to stay an action to avoid needless decisions of state law).

19

There can be no dispute that federal jurisdiction is based upon diversity of citizenship. Water's claims are premised solely upon state causes of action, and there are no compelling federal interest in maintaining these claims in federal court. Furthermore, the Representation Agreement's choice of law provision mandates that South Carolina law be applied, and, as was previously argued above, South Carolina provides adequate relief for this Plaintiff.

### E.      FORUM SHOPPING IS DISCOURAGED.

The last Ninth Circuit factor weighs heavily in favor of abstention since Plaintiff's filing of this action is clearly an attempt at forum shopping. At the time of filing this second action in California, Advent had already filed its action in South Carolina and Plaintiff had likely retained South Carolina counsel and prepared its Answer to the South Carolina action. (Williams Decl., Ex. 2). Plaintiff is now attempting to avoid the appropriate forum selection clause by filing this action, over a month after the South Carolina action was filed, in an attempt to secure a "home court" advantage.

### F.      THE FACTORS WEIGH IN FAVOR OF ABSTENTION AND DISMISSAL OF THIS ACTION.

The applicable factors followed by the Ninth Circuit weigh in favor of abstaining from hearing this case and require dismissal of this case. Dismissal will conserve judicial resources, prevent forum shopping and prevent duplicative proceedings with the potential for inconsistent outcomes. Therefore, this Court should dismiss this action and allow plaintiff to seek relief in the first filed South Carolina action.

#1243304 v2
107136-60464

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.


Respectfully submitted,


**BLANCHARD, KRASNER & FRENCH**
800 Silverado Street, Second Floor
La Jolla, California 92037
Telephone: (858) 551-2440
Facsimile: (858) 551-2434
*Attorneys for Defendants*
*Advent Product Development, Inc., Denice*
*Thurlow, and Alphonso Eiland*


By:    s/ Kipp A. Williams
          Kipp A. Williams

DATED: November 7, 2007

Of Counsel:

David E. De Lorenzi
Carrie A. Longstaff
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310

#1243304 v2
107136-60464

# <u>EXHIBIT A</u>

LEXSEE



Analysis
As of: Nov 07, 2007

**ALFRED PAPPALARDO, Plaintiff, v. ADVENT PRODUCT DEVELOPMENT, INC., Defendant. VERNON PRIOLEAU, Plaintiff, v. ADVENT PRODUCT DEVELOPMENT, INC., et al., Defendants.**

**Civil Action No. 06-4697 (RMB), [Docket No. 6], Civil Action No. 06-4698 (RBK), [Docket No. 6]**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**2007 U.S. Dist. LEXIS 31572**

**April 30, 2007, Decided**
**April 30, 2007, Filed**

**NOTICE:**    [*1] NOT FOR PUBLICATION

**SUBSEQUENT HISTORY:** Dismissed by Pappalardo v. Advent Prod. Dev., Inc., 2007 U.S. Dist. LEXIS 41292 (D.S.C., June 5, 2007)

**CORE TERMS:** forum selection clause, venue, invention, patent, overreaching, expensive, bargaining power, oral argument, convenience, invalidate, contract of adhesion, personal jurisdiction, public interests, substantial part, unenforceable, transferring, contractual, transferred, bargaining, encompass, mandatory, induced, unequal, drop, state law, disputes arising, contractual language, broad language, public policy, place of business

**COUNSEL:** Norman Elliot Lehrer, Esq., Cherry Hill, NJ, Attorney for Plaintiffs.

David E. Delorenzi, Esq., Carrie Ann Longstaff, Esq., Gibbons, P.C., Newark, NJ, Attorneys for Defendants.

**JUDGES:** RENEE MARIE BUMB, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RENEE MARIE BUMB

**OPINION**

**OPINION**

   **BUMB,** United States District Judge:

**Introduction:**

   This matter comes before the Court upon Advent Product Development, Inc.'s, ("Advent" or "Defendant") motions to dismiss or, in the alternative, to transfer the forum of the above-captioned matters. The above-captioned matters present identical issues and were consolidated for all purposes on January 29, 2007. [Docket No. 19 for 06-4697, and No. 14 for 06-4698]. Because the Defendant's motion papers are nearly identical and Plaintiffs have submitted one opposition brief for both motions, this Court will discuss both motions simultaneously.

**Background:**

   In their complaints, Vernon Prioleau ("Prioleau") and Alfred Pappalardo ("Pappalardo") (collectively referred to as "Plaintiffs") assert that they individually responded to an advertisement by Advent, an "invention promoter" in 2004. Plaintiffs allege that, [*2] as a result of meeting with a representative of Advent and Advent's "statements or representations that they had a track record of success" each chose Advent to promote their invention. (Amended Complaints at P 11). Both Prioleau and Pappalardo allege that at the meeting with Advent, each was led "to believe that he had a great invention that would make him a great deal of money." (Id. at P 12). Each Plaintiff paid $ 595 for "a Product Profile Report which included a patentability search conducted through

the U.S. Patent and Trademark Office records." (Id. at P 13).

Both Plaintiffs received a legal protection report from Richard W. Goldstein, a registered patent attorney, who is not an employee of Advent. Plaintiffs assert that these reports referred to only three related patents "[d]espite the fact that numerous other patents exist that are very similar to [each Plaintiff's]" invention. (Id. at P 14). Prioleau alleges that "Goldstein had knowledge that additional relevant patents existed" but never advised him of that fact or that "a client with a similar invention didn't make any money." (Prioleau's Amend. Compl. at P 15). Despite this, Goldstein recommended that a patent application [*3] be filed. Based on this recommendation and "Advent's continuing assurances that the invention would make money, Prioleau was induced by Advent to pay Advent approximately $ 9,000 to enter a representation agreement." (Id. at P 16).

Pappalardo also alleges that, despite the fact that there were numerous patents similar to his invention, Goldstein recommended that a patent application be filed. As a result of this recommendation and in light of "Advent's continuing assurances that the invention would make money, Pappalardo was induced to pay approximately $ 9,000 to enter into a representation agreement." (Pappalardo's Amend. Compl. at P 15).

Both Plaintiffs state that the Representation Agreement was a "contract for invention promotion services" as set forth in 35 U.S.C. § 297(c)(1) and that Advent failed to disclose information required by 35 U.S.C. 297(a) prior to Plaintiffs' entry into the respective Agreements. Plaintiffs further allege that both Advent and Goldstein hold themselves out as being knowledgeable and experienced in their respective businesses and, as a result, knew or should have known that meaningful patent protection [*4] was not available. In essence, Plaintiffs argue that had Advent or Goldstein advised them that there was no meaningful patent protection available, meaning that no company would pay for the inventions, neither Plaintiff would have entered into the Agreement with Advent. As a result, Plaintiffs allege that Advent has violated 35 U.S.C. § 297, the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1 et seq., and has committed common law fraud. Of note is the fact that the executed Representation Agreements at issue contain a forum selection clause that states as follows:

> This Agreement shall be governed by and interpreted according to the laws of the State of South Carolina, which Client hereby agrees shall be the appropriate venue for any action, and Client submits to the personal jurisdiction thereof.

**Discussion:**

Advent has brought the instant motions asking this Court to dismiss Plaintiffs' complaints or, alternatively, to transfer this action to the United States District Court for the District of South Carolina. This Court will first address the portion of Defendant's motions that ask this Court to transfer [*5] this consolidated matter to South Carolina pursuant to the parties' forum selection clause and 28 U.S.C. § 1404(a).

Advent argues that the Plaintiffs have entered into an agreement with Defendant that requires the instant dispute be resolved in South Carolina. According to Advent, Plaintiffs' claims arise out of their fully executed Representation Agreements ("Agreements") and these Agreements specifically state that "any" disputes arising between the parties were to be resolved in the federal courts of South Carolina. More specifically, the Agreements clearly state that South Carolina is "the appropriate venue of any action and that [Plaintiff] submits to the personal jurisdiction thereof." (See Ex. C to Thurlow Decl.).

Because the Agreement contains express, unambiguous contractual language regarding the exclusive forum, Advent argues that this Court, if it is not inclined to dismiss these actions, must transfer these matters to South Carolina. The forum selection clause, Defendant argues, applies to the instant actions because of its broad language stating that it encompasses "any action." Moreover, transferring this action will be consistent with the [*6] purposes of 28 U.S.C. § 1404(a), which states that a civil action may be transferred "for the convenience of the parties and witnesses, in the interest of justice [to] . . . any other district . . . where it might have been brought."

This Court's first task is to determine whether the forum selection clause is valid and enforceable. In the Third Circuit, pursuant to the Supreme Court's instruction, forum selection clauses are "presumptively valid." *Reynolds Publishers Inc., v. Graphics Financial Group, 938 F. Supp. 256 (D.N.J. 1996).* Moreover, such clauses will generally be enforced unless the objecting party establishes any of the following:

> (1) it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Id.* at 263 (citing *Costal Steel Corp. v. Tilghman Whee-labrator Ltd.,* 709 F. 2d 190, 202 (3d Cir. 1983)).

Plaintiffs assert that the forum selection clause was not bargained [*7] for, as there was no meeting of the minds, and is unenforceable "legalese" because the Plaintiffs are "working class men," who do not understand its terms. (Pls.' Br. at 10). As such, Plaintiffs assert that the forum selection clause is an unenforceable contract of adhesion and the result of "overreaching."

In order to set aside a forum selection clause based on fraud, Plaintiffs would need to show that "the forum selection clause is the result of fraud in the inducement of the [forum selection] clause itself." *MoneyGram Payment Sys. v. Consorcio Oriental,* 65 Fed. Appx. 844, 847 (3d Cir. 2003). While Plaintiffs' complaints make general allegations of fraud, there is no evidence presented that the forum selection clause itself was the result of coercion. Instead, Plaintiffs mainly rely on their arguments that the clause is part of a contract of adhesion and not the product of bargaining.

As an initial matter, "[t]he mere fact that an agreement containing a forum selection clause is a contract of adhesion does not render the clause unenforceable." *Mathews v. Rescuecom Corp.,* 2006 U.S. Dist. LEXIS 8608 at *18 (D.N.J. Feb. 16, 2006). Moreover, Plaintiffs' [*8] allegation that the contract is the result of overreaching because of unequal bargaining power is not adequately supported. Plaintiffs' arguments are unsupported by either allegations or evidence that they were not given enough time to review the Agreements or that they attempted to negotiate the terms of the Agreements but were rebuffed. Plaintiffs attempt to invalidate the clause for lack of bargaining on bare allegations alone is inadequate. *See Re-Source America, Inc., v. Corning Inc.,* 2007 U.S. Dist. LEXIS 4676 at *11 (D.N.J. Jan. 19, 2007) (refusing to find that forum clause was product of overreaching where plaintiff did not provide evidence that it attempted to negotiate and was rebuffed); *Mathews v. Rescuecom Corp.,* 2006 U.S. Dist. LEXIS 8608 at *18 (D.N.J. Feb. 16, 2006) (rejecting plaintiff's summary conclusions that agreements were non-negotiable as insufficient to set aside forum selection clause); *Park Inn Int'l., L.L.C. v. Mody Enter.,* 105 F. Supp. 2d 370, 375 (D.N.J. 2000) ("that there may not have been actual negotiations over a forum selection clause does not affect its validity.") (internal citations omitted).

Also, [*9] the existence of superior bargaining power will not necessarily invalidate a forum selection clause. Because Plaintiffs have presented no evidence that Advent took on "an overweening bargaining position" that resulted in a "fraudulently induced forum se-

lection provision" this Court does not find grounds to invalidate the forum selection clause because of uneven bargaining power. *See Bonanno v. Quiznos Master LLC,* 2006 U.S. Dist. LEXIS 85131 at *10 (Nov. 17, 2006) (finding that lack of negotiation and unequal bargaining power were insufficient to invalidate forum selection clause where there was no indication that unequal positions resulted in fraudulently obtained clause).

Finally, Plaintiffs argue that they did not understand the clause because they "do not know what the term 'venue' means nor do [they] understand what an 'action' is." A review of the contractual language reveals, however, that this clause "is not fraught with the kind of legalese that would be incomprehensible to a person without a legal background." *Reynolds Publishers, Inc.,* 938 F. Supp. at 264. While Plaintiffs may be unaware of the term "personal jurisdiction" this Court finds [*10] it difficult to believe they do not understand what an "action" is or that the clause made clear that such "actions" were to take place in South Carolina.

Alternatively, in their individual affidavits, each Plaintiff contends that despite signing the Agreement, they were not aware that the clause was included because they "were too excited about all the money [they] were going to make." (Pappalardo Decl. at P 13 & Prioleau Decl. at P 14). This Court is not prepared to excuse Plaintiffs' failure to carefully read the provisions of the Agreement because they were too "excited" to review them; "[a] failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation." *Park Inn Int'l., v. Mody Enter., Inc.,* 105 F. Supp. 2d 370, 375 (D.N.J. 2000) (noting that "[t]he enforceability of unread forum selection clauses has frequently been litigated in the context of tickets for passage by ship, usually to the disappointment of the passenger resisting enforcement of the clause"). In light of the foregoing, this Court has concluded that the forum selection clauses at issue are not the result of overreaching and are therefore [*11] valid and enforceable.

Even if deemed valid, Plaintiffs contend that the clause is nevertheless, inapplicable to the instant action. Plaintiffs argue that the clause is inapplicable because it "does not state that any action *must* be brought in South Carolina" and because it is part of the Representation Agreement and the instant action is "not an action based on that agreement" but rather is an action based on 35 U.S.C. § 297. (Pl.'s Br. at 7).

This Court disagrees with Plaintiffs' interpretation of the clause's language as "non-mandatory". The plain language makes it clear that "South Carolina . . . shall be the appropriate venue for any action." The use of the word "shall" indicates that the language is mandatory. *See Wall St. Aubrey Golf, LLC v. Aubrey,* 189 Fed. Appx. 82,

2006 U.S. App. LEXIS 13817 at *8 (3d Cir. 2006) (finding clause language that states "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania" as mandatory). Moreover, "any action" encompasses the instant dispute, which has come about because of the Agreement between the parties. See *MoneyGram, 65 Fed. Appx. at 846* [*12] (finding that forum selection language saying "any unresolved dispute....arising out of" the Agreement applied to claims for fraud and conversion). Moreover, the mere pleading of non-contract actions does not render the forum selection clause inoperable. See *Crescent Int'l Inc., v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988)* ("pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause of the claims asserted arise out of the contractual relation and implicate the contract's terms.").

Morever, the term "any action" is also broad enough to encompass the alleged misrepresentations made prior to the execution of the Agreement. See *Intn'l Business Software Solutions Inc., v. Sail Labs Tech., 440 F. Supp. 2d 357, 363-64 (D.N.J. 2006)* (finding that forum selection clause applied because of its broad language despite arguments that misrepresentations were made before the agreement was executed). Thus, the clause is both mandatory and broad enough to apply to the instant dispute.

Where a forum selection clause is valid, "the plaintiffs bear the burden of demonstrating why they should not be bound by their [*13] contractual choice of forum." *Jumara v. State Farm Ins., 55 F.3d 873, 880 (3d Cir. 1995)*. While the contractual forum choice is given considerable weight, however, the existence of such a clause is not dispositive and this Court must also consider several other factors in determining the appropriateness of a transfer pursuant to § 1404(a). *Stewart Org., Inc., v. Richoh Corp., 487 U.S. 22, 29-30, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)*. These factors include matters of both private and public interests as delineated in *Jumara*. The private factors include:

> 1) the Plaintiffs' forum preference; (2) the Defendant's forum preference; (3) the location where the events occurred and claims arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof.

*Select Medical Corp. v. Hardaway, 2006 U.S. Dist. LEXIS 15326 at *12 (E.D. Pa. Mar. 31, 2006)* (citing *Jumara, 55 F.3d at 879-80*). The public interest factors to be considered include:

> (1) the relative congestion and burden of the courts in the two fora; (2) the relative ability of the two fora to resolve the case more [*14] expeditiously and inexpensively; (3) the interest of the community at-large, including the interest of a potential jury that would be required to resolve a case that has no relation to its community, and the interest of the communities in having controversies resolved where they arise; and (4) the familiarity of the court with the state law of a foreign state and appropriateness of trying a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court untangle problems in conflict of law, and in law foreign to itself.

*Id.*

With regard to the private interests, it is clear that Plaintiffs prefer New Jersey and Defendant, South Carolina. However the forum selection clause deems South Carolina the preferred forum. On the other hand, the fact that the alleged representations resulting in the Agreements took place in New Jersey weighs in Plaintiffs' favor. Each side contends that witnesses, proof and convenience dictates that the case be heard in their respective preferred forum. Defendant contends that South Carolina is more convenient because it is Advent's principal place of business and where most of its witnesses and [*15] documentation are located. Plaintiffs contend that transferring the case to South Carolina would be unreasonably inconvenient because Plaintiffs' key witnesses and documents are in or near New Jersey and travel would be prohibitively expensive. For example, Plaintiffs assert that it will be too expensive for them to travel to South Carolina with their wives, who are "key" witnesses. (Pls.' Br at 14). However, "difficulties regarding production of non-party witnesses is insufficient under New Jersey law to invoke the forum selection clause." *Magla Prods. v. Chambers, 2006 U.S. Dist. LEXIS 71246 at * 9 (D.N.J. Sept. 29, 2006)*. Moreover, "[m]ere inconvenience or additional expense is not the test for unreasonableness." *Danka Funding, L.L.C. v. Page Scrantom, Sprouse, Tucker & Ford, P.C., 21 F. Supp. 2d 465, 471-72 (D.N.J. 1998)* (internal quotations omitted). Other than additional costs and distance, Plaintiffs have offered no other reason preventing them from traveling to South Carolina and financial hardship alone is not enough. See *id.*

This Court is also wary of Plaintiffs' bare assertions that they could not afford an attorney in South Carolina

and would simply [*16] have to drop the matter if it was transferred. Plaintiffs have not argued that an attorney in South Carolina would be more expensive than their current attorney. Indeed, at oral argument the Court pressed Plaintiffs' counsel to inform it whether the rates of a South Carolina lawyer would be higher, a fact the Court doubted. Plaintiffs' counsel admitted that he had no such knowledge or basis to conclude it would be more expensive for Plaintiffs to litigate in South Carolina. Moreover, if all a party had to do was threaten to drop a matter if it was transferred, the courts in this district would consistently have their hands tied where self-proclaimed unsophisticated plaintiffs, similar to those in this matter, simply threatened to drop their case without more support. While both Plaintiffs in this case attest to the fact that they have minimal savings, they have not shown this Court that it would be unreasonably more expensive to litigate this matter in South Carolina. See Mathews, 2006 U.S. Dist. LEXIS 8608 at * 20 (granting defendant's request to transfer venue despite plaintiff's arguments that the transfer would be too financially burdensome and deny him his day [*17] in court). [1]

> 1  At oral argument, Plaintiffs' counsel offered to submit affidavits setting forth each Plaintiff's financial condition. The Declaration of Plaintiff Vernon Prioleau evidences minimal assets, e.g. $ 20,000 savings and other investments, as well as approximately $ 45,000 equity in his residence. Plaintiff Alfred Pappalardo, however, did not submit a Declaration.

With regard to the public factors, Plaintiffs have offered no evidence that the District of New Jersey is less congested or better equipped to handle this matter. Plaintiffs do assert that enforcement of the forum clause would violate public policy because New Jersey is Plaintiffs' "home forum" and New Jersey has a "strong interest in protecting its citizens" and sending Plaintiffs to South Carolina would "eliminate [Plaintiffs'] ability to enforce their rights and would be contrary to the spirit of the American Inventors Protection Act of 1999." Such contentions are completely unsupported; there is no indication whatsoever that the United [*18] States District Court for the District of South Carolina would be any less inclined to enforce the provisions of the American Inventors Protection Act of 1999 - a federal law.

In addition, Defendant counters by arguing that the public interest will be served by sending the case to South Carolina because it will assure enforcement of the judgment and because the Agreement provides that South Carolina law applies.

Because the forum selection clause is valid and South Carolina law applies, the courts of that forum are more familiar with the laws of that state than this Court;

this public interest factor mitigates in favor of the requested transfer. See Select Medical Corp., 2006 U.S. Dist. LEXIS 15326 at * 19 (finding that where Pennsylvania law applied to case per forum clause, Pennsylvania courts were better equipped to apply their own law than Texas).

On balance, the existence of the valid forum selection clause, which receives substantial consideration, coupled with the above-listed factors ultimately mitigate in favor of transferring this matter to the District of South Carolina.

Finally, at oral argument Plaintiffs argued, for the first time, that this Court [*19] could not transfer this action to South Carolina because venue would not be proper under 28 U.S.C. § 1391. Plaintiffs argued that Section 1391 permits a transfer to a district only where the plaintiff had a right to bring the action originally; it cannot be to a district where the defendant consents to venue, absent satisfaction of the Section 1391 factors. Because this was an issue sprung upon the Court, the Court ordered supplemental briefing on the issue of whether or not the Plaintiffs could have brought this matter originally in South Carolina.

The parties agree, in their supplemental submissions, that the application of 28 U.S.C. § 1391(b)(2) governs this case. Section 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). This Court finds that Plaintiffs could have brought this case in South Carolina. South Carolina is where Advent has its principal place of business, is the location for the forum selection clause, where Goldstein directed all of his contacts to Advent, where Goldstein [*20] obtained all of his information from Advent for Plaintiffs' inventions to prepare the Legal Protection Reports, and where Goldstein sent the Legal Protection Report once he completed it. (See Supp. Thurlow Decl. PP 2-4; Goldstein Decl. PP 2-3). Advent then combined Goldstein's Legal Protection Reports with the Marketing Reports to be sent directly from South Carolina to Plaintiffs' in New Jersey. (Supp. Thurlow Decl. PP 4). It is these Product Profile Reports that were sent directly to Plaintiffs in New Jersey. It is also these Product Profile Reports which allegedly contained omissions of material facts which form the basis for each cause of action. Therefore, venue in South Carolina is proper for all parties because acts performed in and through South Carolina constitute the basis for the alleged wrongdoing.

Although the Plaintiffs argue that the substantial part of the events in this case occurred in New Jersey, this argument, even if proven to be true, does not defeat venue in South Carolina. Venue may still be proper in

more than one district, provided that a "substantial part" of the events occurred in more than one district. *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 426 (D.N.J. 2000) [*21] ("The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too...even if it is shown that the activities in B were more substantial, or even the most substantial." (quoting David D. Siegel, Commentary on 1988 and 1990 Revisions of Section 1391, in 28 U.S.C.A. § 1391 (West 1993), at 9)).

In conclusion, a transfer to South Carolina is proper under 28 U.S.C. § 1391(b)(2).

Because this Court has decided to transfer the matter, Defendant's motions to dismiss are denied as moot.

An accompanying Order will issue this date.

Dated: April 30, 2007

s/ Renee Marie Bumb

UNITED STATES DISTRICT JUDGE

## ORDER

THIS MATTER having come before the Court upon Defendant's motion to dismiss, or alternatively, to transfer this matter to the District of South Carolina; and the Court having considered the moving papers, and the opposition thereto; and the Court having heard oral argument from the parties; and for the reasons expressed in the Opinion issued this date;

IT IS hereby **ORDERED** that the Defendant's motion for to transfer to [*22] the District of South Carolina is **GRANTED;**

IT IS FURTHER ORDERED that Defendant's motions to dismiss are **DENIED** as **moot.**

Dated: April 30, 2007

**s/ Renee Marie Bumb**

UNITED STATES DISTRICT JUDGE