# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WATERS, individually and on behalf of other members of the general public similarly situated,<br><br>         Plaintiff,<br> v.<br><br>ADVENT PRODUCT DEVELOPMENT, INC., a South Carolina Corporation, DENISE THURLOW, ALPHONSO EILAND, and Does 1 through 50, inclusive,<br><br>         Defendants. | CASE NO. 07cv2089 BTM(LSP)<br><br>**ORDER DENYING MOTION TO REMAND, DENYING AS MOOT MOTION TO AMEND NOTICE OF REMOVAL, AND DENYING MOTION TO DISMISS** |

  Plaintiff Matthew Waters ("Plaintiff") has filed a motion to remand this action to state court. Defendants Advent Product Development, Inc. ("Advent"), Denise Thurlow ("Thurlow"), and Alphonso Eiland ("Eiland") (collectively "Defendants"), have filed a motion for leave to file an amended notice of removal and a motion to dismiss. For the reasons discussed below, Plaintiff's motion is **DENIED**, Defendants' motion for leave to file an amended notice of removal is **DENIED AS MOOT**, and Defendants' motion to dismiss is **DENIED**.

## I. BACKGROUND

  Plaintiff commenced this action in the Superior Court of the State of California, County

of San Diego. According to Plaintiff's Complaint, in or about April 2006, Plaintiff responded to a radio advertisement in which Advent offered assistance to prospective inventors with respect to obtaining legal protection for their inventions and marketing the inventions once legal protection had been obtained. (Compl. ¶ 20.) Plaintiff met with Thurlow and Eiland, representatives of Advent. (Comp. ¶ 21.) At this initial meeting, Thurlow and Eiland told Plaintiff that his proposed invention had a great chance of success. (Compl. ¶ 22.) Thurlow and Eiland informed Defendant that Advent's standard procedure was that the parties would enter into a "Phase I" contract, in which an initial patent search was performed and a legal opinion would be provided regarding whether the patent search showed that the proposed invention was or was not covered by an existing patent. (Compl. ¶ 23.) If the patent search indicated that there was a good chance that a patent could be obtained for the proposed invention, the parties could enter into a "Phase II" contract, under which further services, including a patent application and marketing of the proposed product, would be performed. (Compl. ¶ 23.)

Plaintiff signed the "Phase I" contract and provided a sum of $1,190.00 to Defendants. (Compl. ¶ 24.) In or about May 2006, Plaintiff received a "Legal Protection Report" from Defendants. (Id.) The "Legal Protection Report" recommended that Plaintiff proceed further and file a patent application. (Id.) Relying on the "Legal Protection Report," Plaintiff entered into the "Phase II" contract, which required Plaintiff to provide Defendants with a sum total of $9,240.00. (Compl. ¶ 25.) Plaintiff began to make the required payments. (Id.)

In or about April, 2007, after becoming frustrated with the lack of performance on Defendants' part, Plaintiff investigated the accuracy of the "Legal Protection Report," and discovered that the report was incomplete, deficient, and erroneous. (Compl. ¶ 27.) Specifically, Plaintiff found that at least four separate patents were so closely related to Plaintiff's idea that patent protection could not have been obtained. (Id.) Plaintiff discovered the four patents within one hour of starting his informal investigation. (Id.)

Plaintiff is informed and believes that Defendants failed to disclose the existence of the four patents in a blatant attempt to induce Plaintiff to enter into the "Phase II" contract

and pay the required fee. (Compl. ¶ 28.) Plaintiff brings this action on behalf of himself and a purported class of approximately 800 individuals who are current and/or former customers of Defendants. (Compl. ¶¶ 11-19.)

Plaintiff asserts claims for (1) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (2) violation of Cal. Bus. & Prof. Code §§ 17200, 22373, 22374, 22379, 22380; and (3) fraud. On the CLRA claim, Plaintiff seeks the following damages: actual damages; an order enjoining the illegal methods, acts, and practices; restitution; and for each "senior citizen" and "disabled person," an additional $5,000 under Civil Code § 1780 (b). On the second cause of action, Plaintiff seeks $3,000 or treble the actual damages per class member pursuant to Bus & Prof. Code § 22386. Plaintiff also seeks a permanent injunction on behalf of the § 17200 claimants. In addition, Plaintiff seeks an award of attorney's fee and costs and punitive and exemplary damages where permissible.

On October 31, 2007, Defendants removed this action to federal court. Defendants removed the action on the ground that the Court had original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because the Complaint purports to be a class action, there is diversity of citizenship under the Class Action Fairness Act of 2005 ("CAFA"), and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

## II. DISCUSSION

### A. Motion to Remand & Motion For Leave to File Amended Notice of Removal

Plaintiff seeks to remand this action on a variety of grounds. As discussed below, the Court finds that none of these grounds has merit.

### 1. California Corporations Code

Plaintiff argues that Advent has failed to obtain a valid certificate from the Secretary

of State and is therefore bound to the jurisdiction of the State of California. Plaintiff relies on Cal. Corp. Code § 2203(a), which provides:

> Any foreign corporation which transacts intrastate business and which does not hold a valid certificate from the Secretary of State may be subject to a penalty of twenty dollars ($20) for each day that unauthorized intrastate business is transacted; and the foreign corporation, by transacting unauthorized intrastate business, shall be deemed to consent to the jurisdiction of the courts of California in any civil action arising in this state in which the corporation is named a party defendant.

However, nothing in section 2203(a) limits a defendant corporation's right to remove an action to federal court. Even if Advent may be deemed to have consented to the jurisdiction of the California courts, Advent did not waive its right to remove the action by any failure to procure a certificate from the Secretary of State.

### 2. **Procedural Defects**

Plaintiff argues that the Notice of Removal was defective because it failed to establish the out-of-state citizenship of the individual defendants and failed to attach all of the required documents. This argument lacks merit.

Defendants removed this action pursuant to 28 U.S.C. § 1132(d)(2)(A), which provides:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which --
>
> (A) *any member of a class of plaintiff is a citizen of a State different from any defendant*;
>
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

The Notice of Removal alleged that Advent is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in South Carolina. Plaintiff admittedly is a citizen of California. Therefore, diversity of citizenship exists for purposes of section 1132(d)(2)(A).

The fact that the Notice of Removal stated where Eiland and Thurlow reside but failed to state their citizenship is of no consequence to the determination of jurisdiction. Nonetheless, Defendants have clarified that Thurlow is domiciled in and is a citizen of South Carolina and Eiland is domiciled in and is a citizen of California. (Thurlow Decl. ¶ 2; Eiland Decl. ¶ 2.) The Court will treat this additional information as an amendment to the Notice of Removal. See Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n. 1 (9th Cir. 2002) (explaining that it was proper for the district court to construe an opposition to a motion to remand, which explained that the amount in controversy was based on a settlement demand, as an amendment to the notice of removal). Therefore, Defendants' motion to amend the notice of removal to identify the citizenship of Thurlow and Eiland is denied as moot.

Plaintiff also argues that the Notice of Removal was defective because it failed to attach a copy of the civil case cover sheet, a copy of the state court summons, a copy of the return of service, and an alternate dispute resolution packet. However, the Notice of Removal actually did attach copies of the civil case cover sheet, the summons, and the alternative dispute resolution packet. The Notice of Removal did not attach the return of service. However, even assuming that the return of service was served on Defendants and should have been filed, this oversight is insignificant and does not mandate the remand of this action. See, e.g., Cavanaugh v. Unisource Worldline, Inc., 2006 WL 1153776 (E.D. Cal. Apr. 28, 2006) (denying motion to remand where the plaintiff argued that the defendant failed to include the summons with the notice of removal).

**3. Amount in Controversy**

Plaintiff contends that Defendants have failed to meet their burden of establishing that the amount in controversy exceeds $5,000,000. The Court disagrees.

Under CAFA, the burden of establishing removal jurisdiction rests on the removing party. Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006). When the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy has been

met." Id. at 683 (citing Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)).  When the amount in controversy is not apparent from the face of the Complaint, the court may also consider post-removal submissions.  Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005); Singer v. State Farm Mut. Auto. Ins. Co, 116 F.3d 373, 377 (9th Cir. 1997).

Plaintiff alleges that his claims and damages are typical of those in the purported class.  Plaintiff alleges that the contracts he executed are identical to those received by the remaining class members.

Plaintiff paid an initial $1,190 for the "Phase I" contract.  The "Phase II" contract (Ex. 5 to Thurlow Decl. in support of Motion to Dismiss) provided that $9,240 must be paid *in advance* to Advent.  In the Complaint, Plaintiff alleges that he "did *begin* to make the required payments" for the "Phase II" contract, making it unclear how much he is allegedly owed as restitution. (Emphasis added.)  However, Defendants have submitted evidence that Plaintiff paid a deposit of $4,000 for the second contract and thereafter signed a promissory note and security agreement to a third-party financing company for the remaining $5,240.  (Thurlow Decl. ¶ 4, Ex. B.)  Therefore, Plaintiff's claim for restitution is for the full $9,240 for the "Phase II" contract and $1,190 for the "Phase I" contract, a total of $10,430.

The other members of the purported class have also paid Advent in full for both contracts. (Thurlow Dec. ¶ 5.)[1]  If treble damages are awarded under Cal. Bus. & Prof. Code § 22386, the total amount of damages based on the refunds alone would be $25,032,000 ($10,430 x 3 x 800).  Therefore, the Court finds that Defendants have established by a preponderance of the evidence that the amount in controversy is in excess of $5,000,000. The Court does not reach Defendants' alternate argument that the Court has federal question jurisdiction over the action due to issues of patent law.

---

[1] Plaintiff objects to paragraphs 3, 4 and 5 of Thurlow's declaration on the grounds of relevance, hearsay, and lack of personal knowledge.  This objection is overruled.  The evidence is certainly relevant and Thurlow's position in the company (President) is such that she would have personal knowledge of the matters set forth in her declaration.  Plaintiff's objections to paragraph 6 of Thurlow's declaration and Ex. B to the Declaration of Carrie Longstaff are overruled as moot because the Court does not rely on this evidence.

### 4. Exceptions to CAFA

Plaintiff argues that remand is proper under one of the exceptions to CAFA. The Court disagrees.

Under the "home-state controversy" exception, a district court shall decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, *and the primary defendants*, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (emphasis added). The term "primary defendants" is not defined. Some courts interpret the term as referring to all defendants facing direct liability, see, e.g., Passa v.Derderian, 308 F. Supp. 2d 43, 62-63 (D.R.I. 2004), whereas others interpret the term to apply to the defendants who would be expected to incur most of the loss if liability is found. See, e.g., Harrington v. Mattel, 2007 WL 4556920 (N.D. Cal. Dec. 20, 2007). Under either definition, Advent would qualify as a "primary defendant." As previously discussed, Advent is not a citizen of California. Therefore the "home-state controversy" exception is inapplicable.

Similarly, 28 U.S.C. § 1332(d)(3) applies only to class actions "in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate" are citizens of the California and "the primary defendants are citizens of the State in which the action was originally filed." As noted above, the primary defendant is not a citizen of California. Therefore, this provision is inapplicable.

The "local controversy" exception provides:

A district court shall decline to exercise jurisdiction . . .

    (A)(i) over a class action in which --

        (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

        (II) at least 1 defendant is a defendant --

            (aa) from whom *significant relief* is sought by members of the plaintiff class;

            (bb) whose alleged conduct forms a *significant basis* for the claims asserted by the proposed plaintiff class; and

                    (cc) who is a citizen of the State in which
the action was originally filed; and

               (III) Principal injuries resulting from the alleged conduct or
any related conduct of each defendant were incurred in the State
in which the action was originally filed; and

         (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4) (emphasis added).

       The terms "significant relief" and "significant basis" are not defined in the statute. However, a Judiciary Committee Report on CAFA gave the following example of the application of clause (aa):

> [I]n a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.

S. Rep. No. 109-14 at 40. Based on this legislative history, courts have concluded that "significant relief" refers to instances where the relief sought against a particular defendant is a significant portion of the total relief sought by the whole class. <u>Kearns v. Ford Motor Co.</u>, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005); <u>Escoe v. State Farm Fire & Cas. Co.</u>, 2007 WL 1207231 (E.D. La. Apr. 23, 2007).

       The <u>Kearns</u> court also referred to legislative history in determining the meaning of "significant basis." The Committee Report quoted above included the following comment regarding the hypothetical insurance scheme:

> Similarly, the agent presumably would not be a person whose alleged conduct forms a basis for the claims asserted. At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.

S. Rep. No. 109-14 at 40. Based on this legislative history, the <u>Kearns</u> court concluded that Kearns did not seek "significant relief" against a car dealer which sold cars to only a fraction of the class and that the car dealer's conduct did not form a significant basis of the claims

asserted.

Here, Eiland is the only defendant who is a California citizen. Based on the Complaint, Eiland was a representative of Advent who met with Plaintiff. (Compl. ¶ 21.) The Complaint does not make any other specific allegations regarding Eiland's role in the conduct that is the basis of the Complaint. Thurlow declares that Eiland is a representative of Advent who works solely out of Advent's San Diego office and who has no involvement in the creation of Advent's contractual agreements or the creation of the Legal Protection Reports. (Thurlow Decl. ¶ 3.) Advent has three offices in California with various representatives located at each of these offices. (Id.)

Like the insurance agent in the Committee Report's hypothetical and the car dealer in Kearns, it appears that Eiland had contact with only some of the class members and would not be a defendant from whom the class seeks significant relief when compared to the whole. Similarly, it seems that Eiland was an "isolated role player" whose conduct did not form a significant basis of the claims asserted.

Plaintiff bears the burden of proof as to the applicability of any statutory exception under 28 U.S.C. §§ 1332(d)(4)(A) and (B). Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007). For the reasons discussed above, Plaintiff has not carried his burden that the local controversy exception applies. Therefore, Plaintiff's motion to remand is denied.

**B. Motion to Dismiss**

Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3), based on a forum selection clause in the "Phase II" contract ("Representation Agreement"). As discussed below, the Court finds that the forum selection clause is unenforceable. Defendants also move to dismiss this action under the Colorado River abstention doctrine. The Court does not find abstention to be appropriate in this case and therefore denies Defendants' motion to dismiss in its entirety.

///

### 1. Forum Selection Clause

#### a. Law Governing Motion to Dismiss Based on Forum Selection Clause

Under Ninth Circuit law, a motion to dismiss based on a forum selection clause is treated as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). In resolving a motion to dismiss under Rule 12(b)(3), the pleadings need not be accepted as true, and the district court may consider facts outside of the pleadings. Id.

Federal law governs the enforcement of forum selection clauses in diversity cases. Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are presumptively valid, and should be honored "absent some compelling and countervailing reason." Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972). A forum selection clause is unreasonable under the following circumstances: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the selected forum is so "gravely difficult and inconvenient" that the party opposing enforcement of the clause will "for all practical purposes be deprived of its day in court"; or (3) if enforcement would contravene a strong public policy of the forum in which suit is brought. Id. at 12-13, 15, 18. See also Argueta, 87 F.3d at 325. The party challenging the clause bears a "heavy burden of proof." Bremen, 407 U.S. at 15.

#### b. Plaintiff's Arguments Regarding Procedural Deficiencies

Plaintiff argues that Defendants' motion to dismiss is barred as a result of procedural deficiencies. Plaintiff's argument lacks merit.

Plaintiff contends that Advent has waived any objection to improper venue by removing the action to this Court. However, under Ninth Circuit law, a defendant who removes an action to federal court may subsequently seek to enforce a forum selection clause by way of a Rule 12(b)(3) motion to dismiss. In Spradlin v. Lear Siegler Mgmt. Serv. Co, Inc., 926 F.2d 865 (9th Cir. 1991), the Ninth Circuit held that the district court properly

1  enforced a forum selection clause in a removed case by granting a motion to dismiss brought
2  pursuant to Rule 12(b)(3).  <u>See also</u> <u>Modius, Inc. v. PsiNaptic, Inc.</u>, 2006 WL 1156390 (N.D.
3  Cal. May 2, 2006) (granting motion to dismiss on the basis of a forum selection clause in a
4  removed case).  The Sixth Circuit case upon which Plaintiff relies, <u>Kerobo v. Southwestern</u>
5  <u>Clean Fuels Corp.</u>, 285 F.3d 531 (6th Cir. 2002), is contrary to Ninth Circuit law and does not
6  bind this Court.

7  Plaintiff argues that the individual defendants were not parties to the Representation
8  Agreement containing the forum selection clause and, therefore, lack standing to seek
9  enforcement of the forum selection clause.  However, a forum selection clause may, in
10  certain circumstances, be applied to defendants who were not parties to the contract
11  containing the clause.  In <u>Manetti-Farrow</u>, 858 F.2d at 514 n. 5, the Ninth Circuit noted, "We
12  agree with the district court that the alleged conduct of the non-parties is so closely related
13  to the contractual relationship that the forum selection clause applies to all defendants."  <u>See</u>
14  <u>also</u> <u>Comerica Bank v. Whitehall Specialties, Inc.</u>, 352 F. Supp. 2d 1077, 1082 n. 6 (C.D. Cal.
15  2004) (explaining that individual defendants were bound by the forum selection clause even
16  though they never entered into any contract that included the forum selection clause because
17  the individuals, owners and directors of one of the parties to the contract, were closely
18  related to the contractual relationship at issue).  The alleged conduct of Eiland, an Advent
19  employee, and Thurlow, President of Advent, is so closely related to the Representation
20  Agreement – i.e., they allegedly induced Plaintiff into entering into the Representation
21  Agreement that would never be performed – that Eiland and Thurlow fall within the scope of
22  the forum selection clause.

23  Plaintiff contends that Defendants' motion to dismiss is untimely and that Defendants
24  have therefore waived their venue argument.  Plaintiff is incorrect.  The Notice of Removal
25  was filed on October 31, 2007, a Wednesday.  Under Fed. R. Civ. P. 81(c), Defendants were
26  required to respond to the Complaint within five days of the filing of the Notice of Removal.
27  Under Fed. R. Civ. P. 6(a), the intervening Saturday and Sunday were excluded from the
28  calculation, and the deadline for filing the motion to dismiss was November 7, 2007.  The

motion to dismiss was filed on November 7, 2007, and was timely.

### c. **Enforceability of the Forum Selection Clause**

The forum selection clause and choice-of-law provision in the Representation Agreement provides:

> This Agreement shall be governed by and interpreted according to the laws of the State of South Carolina, which Client hereby agrees *shall be the appropriate venue for any action*, and Client submits to the personal jurisdiction thereof.

(Ex. 5 to Thurlow Decl.) (Emphasis added.)

This forum selection clause is mandatory, as opposed to permissive, because it designates South Carolina as the exclusive forum. See Northern California District Council of Laborers v. Pittsburg-Des Monies Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995). The clause provides that South Carolina shall be "*the* appropriate venue," not "*an* appropriate venue."

Furthermore, all of Plaintiff's claims fall within the scope of the forum selection clause. The clause states that "any action" must be brought in South Carolina. Plaintiff's tort claims are intertwined with the rights and duties established by the Representation Agreement and, therefore, are covered by the forum selection clause. See Manetti, 858 F.2d at 514 (holding that tort claims related to the rights and duties enumerated in the exclusive dealership contract and consequently fell within the scope of the forum selection clause). See also Modius, 2006 WL 1156390 at *7 (finding that all of Plaintiff's tort causes of action related to the Reseller Agreement, which contained the forum selection clause).

Because the forum selection clause is presumptively valid, Plaintiff bears the burden of establishing that the forum selection clause is unreasonable. Bremen, 407 U.S. at 15. Plaintiff does not argue that the inclusion of the clause in the agreement was a product of fraud or overreaching. Although Plaintiff argues that "the balance of convenience" weighs in favor of the action staying in California because he and the rest of the class members reside in California, Plaintiff does not contend that bringing the action in South Carolina would be so "gravely difficult and inconvenient" that Plaintiff would be effectively deprived of

his day in court.

Plaintiff does argue that the enforcement of the forum selection clause and concomitant choice-of-law provision would violate a strong public policy of California. According to Plaintiff, enforcement of the forum selection clause would violate the CLRA's anti-waiver provision, which states, "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1751. Plaintiff argues that requiring Plaintiff to proceed under South Carolina law would be tantamount to a waiver because the South Carolina Unfair Trade Practices Act ("SCUTPA") does not allow class actions and does not provide for the same damages as the CLRA.

In America Online, Inc. v. Superior Court of Alameda County, 90 Cal. App. 4th 1 (2001), the Court refused to enforce a forum selection clause that designated Virginia as the exclusive forum. The court reasoned that enforcement of the clause would violate the public policy stated in Cal. Civ. Code § 1751 because of the substantial differences between the CLRA and the Virginia Consumer Protection Act of 1977 ("VCPA"). Unlike the CLRA, the VCPA did not allow class actions and did not allow plaintiffs to obtain injunctive relief on behalf of others similarly situated. The court held that the unavailability of class action relief in itself was sufficient to preclude enforcement of the forum selection clause. The court also held that the forum selection clause was unenforceable because of the aggregate effect of a number of other differences between California and Virginia law – specifically, Virginia law did not allow the use of a multiplier to calculate attorney's fees, and the VCPA had a shorter statute of limitations, did not provide for enhanced remedies for disabled and senior citizens, and only allowed restitution, attorneys fees, and costs if the violation was determined to be "unintentional." Id. at 18.

Plaintiff contends that the SCUTPA prohibits class actions. Plaintiff relies on the following SCUTPA provision:

> Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, *but not in a representative capacity*, to recover actual damages.

S.C. Code § 39-5-140(a) (emphasis added). However, South Carolina courts do not interpret this provision as prohibiting class actions under the SCUTPA where the class members have suffered actual damages themselves. See Faircloth v. Jackie Fine Arts, Inc., 682 F. Supp. 837, 845 (D.S.C. 1988) ("Plaintiff suggests that this language was intended to preclude class actions under the SCUTPA, but cites no case to support this conclusion. Furthermore, the interpretation proffered by plaintiff is not consistent with the plain language of the statue."), rev'd in part on other grounds sub nom. Faircloth v. Finesod, 938 F.2d 513 (4th Cir. 1991). See also Gentry v. Yonce, 337 S.C. 1 (1999) (class action under the SCUTPA).

Although the SCUTPA does allow class actions, it differs from the CLRA in a couple of significant aspects. Most importantly, it appear that injunctive relief is limited or unavailable under the SCUTPA. The SCUTPA provides for the recovery of actual damages in the case of a non-willful violation of the statute. S.C. Code § 39-5-140(a). Where a willful or knowing violation of the statue occurs, the court shall award three times the actual damages sustained and "may provide such other relief as it deems necessary or proper." The statute does not make any mention of injunctive relief.

At most, injunctive relief may qualify as "other relief" in the case of a willful violation. Some courts have held that injunctive relief is not available to private individuals bringing suit under the SCUTPA, whether the violation is willful or not. See Johnson v. Collins Ent. Co., Inc., 199 F.3d 710 (4th Cir. 1999) (holding that the district court properly declined to issue an injunction under the authority of SCUTPA because the district court observed that the availability of an injunction to private individuals under SCUTPA was "doubtful"); Little v. Brown & Williamson Tobacco Corp., 1999 WL 33291385 (D.S.C. March 3, 1999) (explaining that it appeared that only the Attorney General could seek injunctive relief under the SCUTPA and concluding that plaintiffs could not seek injunctive relief).

///
///
///
///

The CLRA specifically provides that a plaintiff suing under the statute may obtain "[a]n order enjoining the methods, acts, or practices." Cal. Civ. Code § 1780(a)(2). Injunctive relief is not limited to willful violations of the statute. As explained by the California Supreme Court, the availability of injunctive relief is important to the purposes of the CRLA:

> [T]he evident purpose of the injunctive relief provision of the CLRA is not to resolve a private dispute but to remedy a public wrong. Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered.

Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1080 (1999). Thus, the fact that the SCUTPA provides for limited injunctive relief, if at all, is a significant difference that would render enforcement of the Representation Agreement's forum selection clause against the public policy of California.[2]

The Court concludes that enforcement of the forum selection clause would contravene a strong public policy of California. Therefore, the Court will not enforce the clause and will not dismiss the case for improper venue.[3]

**2. Colorado River Abstention**

In a letter dated July 16, 2007, Plaintiff's counsel gave Advent prior notice of Plaintiff's CLRA claims as required by Cal. Civ. Code § 1782. On August 14, 2007, Advent filed a declaratory relief action in the Court of Common Pleas in South Carolina. The declaratory judgment action seeks a declaration of Advent's rights under the Representation Agreement in addition to an order permanently enjoining Plaintiff from breaching the Representation Agreement. Plaintiff's action was filed in California Superior Court on September 18, 2007.

---

[2] The Court notes that the SCUTPA also does not provide for increased penalties where the consumer is a senior citizen or disabled person as does the CLRA. Cal. Civ. Code § 1780(b). This limitation on remedies when viewed together with the limited availability of injunctive relief is significant and precludes the enforcement of the forum selection clause. The Court need not decide whether the lack of increased penalties in the case of senior citizens or disabled persons is sufficient in itself to render enforcement of the forum selection clause against public policy.

[3] The Court overrules as moot Plaintiff's objections to Defendants' Ex. A because the Court does not rely on the exhibit.

Defendants argue that the South Carolina action is a parallel proceeding and that the Court should dismiss this action pursuant to the Colorado River abstention doctrine. The Court disagrees.

Under Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817-19 (1976), federal courts may under "exceptional circumstances" stay or dismiss a case in deference to pending state proceedings.[4] Abstention is not appropriate unless the state and federal actions are "substantially similar." Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).

Here, the state and federal actions are *related* but are not substantially similar. The declaratory relief action concerns the rights and obligations of Plaintiff and Advent under the Representation Agreement. This action relates to the Representation Agreement but encompasses much more. Plaintiff brings this action on behalf of himself and a purported class of other similarly situated individuals. The claims arise out of allegedly deceptive practices of Advent, Eiland, and Thurlow that induced Plaintiff and others to enter into Representation Agreements. These claims are much broader in scope and different in nature than the declaratory relief claim before the South Carolina court. See Grynberg v. Grey Wolf, Inc., 2008 WL 687363 (D. Colo. March 11, 2008) (holding that plaintiff's class action claims of deceptive trade practices were not substantially the same as a suit in Texas state court brought by defendants against plaintiff under the sole contract between the parties).

At any rate, even if the South Carolina action and this action were substantially similar, the Court would decline to abstain under Colorado River. Defendants have not shown that "exceptional circumstances" exist that would warrant abstention.[5] Therefore, the

---

[4] Plaintiff's opposition papers discuss the "first-to-file" rule. However, the "first-to-file" rule applies where the two actions are pending in different federal district courts. See Amerisourcebergen Corp. v. Roden, 495 F.3d 1143, 1156 (9th Cir. 2007) (J. Ferguson concurring). Where one of the actions is pending in state court, the appropriate analysis is under Colorado River.

[5] In assessing whether Colorado River abstention is appropriate, federal courts should consider the following factors: (1) whether either court has assumed jurisdiction over a *res*; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal

Court denies Defendants' motion to dismiss pursuant to Colorado River.

Finally, the Court rejects Plaintiff's claim that counsel for Defendants acted in bad faith by making misrepresentations to the Court. As discussed above, the SCUTPA does permit class actions. As for the alleged factual misrepresentations/ omissions, the Court does not believe that Defendants' counsel went beyond the bounds of permissible argument. As for Plaintiff's allegations that out-of-state counsel for Defendants "practiced law" without proper admission, Carrie Longstaff and David E. De Lorenzi were not admitted to practice in this district at the time they filed their motion to dismiss. However, Carrie Longstaff was admitted pro hac vice on December 5, 2007, and Mr. De Lorenzi is no longer listed as counsel of record. Although counsel should have obtained approval to appear pro hac vice before filing the motion to dismiss and should make sure to do so in any future cases in this district, the error has since been corrected, and this issue is not pertinent to the motions before the Court.

### III. CONCLUSION

For the reasons discussed above, Plaintiff's motion to remand [5] is **DENIED**, Defendants' motion for leave to file an amended notice of removal [9] is **DENIED AS MOOT**, and Defendants' motion to dismiss [4] is **DENIED**.

**IT IS SO ORDERED.**

DATED: June 26, 2008

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge

---

litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) whether the state forum will adequately protect the interests of the parties; and (7) whether the parties have engaged in forum shopping. Colorado River, 434 U.S. at 817-818; Travelers Indemnity Co. v. Madonna, 914 F.2d 1364, 1367-68 (9th Cir. 1990). The aforementioned factors are not a "mechanical checklist." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983). Rather, the decision whether to abstain in favor of parallel state-court litigation rests on a "careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction.*" Id. (emphasis added). In this case, the factors do not even come close to tipping the balance toward abstention.