1  William B. Sullivan [CSB No. 171637]
   Jeffrey M. Seiple [CSB No. 239959]
2  **SULLIVAN & CHRISTIANI, LLP**
   2330 Third Avenue
3  San Diego, California 92101
   (619) 702-6760 * (619) 702-6761 FAX
4

5  Attorneys for Plaintiffs MATTHEW
   WATERS, JAMES HOLSTON, WILLIAM
6  MARRS, ARTHUR GARCIA,  and
   VERONICA JACK individually, and on
7  behalf of other members of the general public
   similarly situated
8
                    **IN THE UNITED STATES DISTRICT COURT**
9
                  **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
10

11 MATTHEW WATERS, JAMES HOLSTON, )   **Civil Action No. 07CV2089 (BTM) (LSP)**
   WILLIAM MARRS, ARTHUR GARCIA, )
12 DENNIS McCORMICK and VERONICA )     **(CLASS ACTION)**
   JACK, individually and on behalf of other )
13 members of the general public similarly )   **SECOND AMENDED COMPLAINT FOR:**
   situated,                          )
14                                    )   **1.   Violation of California Consumers**
                        Plaintiff,    )         **Legal Remedies Act (Class Action);**
15     v.                             )
                                      )   **2.   Violation of Business and Professions**
16                                    )         **Code (Class Action);**
   ADVENT PRODUCT DEVELOPMENT, )
17 INC., a South Carolina Corporation; DAVID )   **3.   Fraud (Individual Claim; WATERS);**
   HEINE, an Individual, WILLIAM T. )
18 MORRELL, an Individual and DOES 1 )   **4.   Fraud (Individual Claim;**
   through 50, inclusive              )         **HOLSTON);**
19                                    )
                                      )   **5.   Fraud (Individual Claim; MARRS);**
20                      Defendants    )
                                      )   **6.   Fraud (Individual Claim; GARCIA);**
21                                    )
                                      )   **7.   Fraud (Individual Claim;**
22                                    )         **McCORMICK); and**
                                      )
23                                    )   **8.   Fraud (Individual Claim; JACK)**
                                      )
24 _____  )

25     COMES NOW Plaintiffs MATTHEW WATERS, JAMES HOLSTON, WILLIAM MARRS,

26 ARTHUR GARCIA, DENNIS McCORMICK, and VERONICA JACK (hereinafter "Plaintiffs"),

27 individually and of behalf of all others similarly situated, and allege for their Complaint as follows:

28 / / /

**PARTIES, JURISDICTION AND VENUE**

1. At all relevant times herein, Plaintiffs MATTHEW WATERS, JAMES HOLSTON, WILLIAM MARRS, ARTHUR GARCIA, DENNIS McCORMICK, and VERONICA JACK (Hereinafter "Plaintiffs") were and are individuals residing in San Diego County in the State of California.

2. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned herein, Defendant ADVENT PRODUCT DEVELOPMENT, INC. (hereinafter "ADVENT"), was and is a South Carolina Corporation doing business in San Diego County, and other counties, State of California.

3. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned herein, Defendant DAVID HEINE (hereinafter "HEINE"), was and is residing and doing business in San Diego County.

4. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned herein, Defendant WILLIAM MORRELL (hereinafter "MORRELL"), was and is residing and doing business in San Diego County.

5. Plaintiffs are presently unaware of the true names, capacities and liability of Defendants named herein as DOES 1 through 50, inclusive. Accordingly, Plaintiffs will seek leave of court to amend this Complaint to allege their true names and capacities after the same have been ascertained.

6. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the wrongs and damages as herein alleged, and in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in doing the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee with the permission and consent of the co-defendants. Plaintiffs' injuries as herein alleged were proximately caused by said Defendants. Wherever it is alleged herein that any act or omission was done or committed by any specially named Defendant or Defendants, Plaintiffs intend thereby to allege and do allege that the same act or omission was also done and committed by each and every Defendant named as a DOE, both separately and in concert or conspiracy with the named Defendant or Defendants.

///

7.    Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, including DOES 1 through 50, are, and at all times herein mentioned were, either individuals, sole proprietorships, partnerships, registered professionals, corporations, alter egos, or other legal entities which were licensed to do and/or were doing business in the County of San Diego, State of California at all times relevant to the subject matter of this action.

8.    Under 28 U.S.C. § 1367, this Court has jurisdiction over Plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the parties are diverse and the amount in controversy exceeds Five-Million Dollars ($5,000,000.00), exclusive of interest and costs, and because the parties are diverse.

## CLASS ACTION ALLEGATIONS

9.    As more specifically set forth below, Plaintiffs are bringing this action on behalf of an ascertainable class and a well-defined community of interest among the class members. Code of Civil Procedure Sections 382 and 1781(a); Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 426, 470.

10.    Plaintiffs bring this action on behalf of themselves and other members in the class whose number is believed to be approximately 800 members.

11.    The approximately 800 member class is ascertainable via their experience as present or past California-based "Customers," as defined by California Business and Professions Code section 22371(b), of the Defendant(s), who acted as "Invention developers," as defined by California Business and Professions Code section 22371(d.). The approximately 800 member class is also ascertainable via the experience as California-based "consumers," defined pursuant to California Civil Code section 1761(c).

12.    The class members share a community of interest and an injury in fact as Defendants have violated California laws, thereby depriving the class members of money earned by Plaintiffs, and illegally gained by Defendant(s.)

13.    This action involves questions of law and fact common to the class Plaintiffs represent which predominate over questions affecting only individual members, including for example, and among other issues, the following:

A.     Whether the "form" contracts authored by ADVENT uniformly and consistently violated multiple California statutes, including various sections of the California Business and Professions Code, to the detriment of each Class Member;

B.     Whether ADVENT violated Business and Professions Code section 22372, which requires that "every contract for invention development services is subject to the provisions of this chapter," and Business and Professions Code section 22373, which requires that "each such contract" shall contain certain required language. Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom;

C.     Whether ADVENT violated Business and Professions Code section 22374, which requires certain language be provided within each and every contract - via a separate cover sheet - between a Customer and Invention developments services. Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom;

D.     Whether ADVENT violated Business and Professions Code section 22379, which requires certain language be provided within each and every contract between a Customer and Invention developments services. Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom;

E.     Whether ADVENT violated Business and Professions Code section 22380, which requires that "every invention developer who charges a fee or requires any consideration for his invention development services must clearly and conspicuously disclose such fact in every advertisement of such services." Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom; and

F.     Whether ADVENT violated California law in (A) Failing to register as a Corporation with the California Secretary of State, thus depriving the Class of certain benefits; (B) Failing to retain a "Bond," thus depriving the Class of certain rights to recovery; and ( C) Failing to register with, or pay taxes to, the Franchise Tax Board, thus depriving the Class

of certain rights of recovery.

16. The class on whose behalf the action is brought is so numerous that joinder of all parties individually would be impractical.  Plaintiffs are bringing this action on behalf of approximately 800 California-based customers/consumers  who share a common or general interest, and it would be impracticable for those current or former to bring the action individually.

17. Plaintiffs' claims in this action are typical of the class Plaintiffs' are generally representing. The Contracts and supporting documents received, signed and executed by Plaintiffs' are identical to those received by the remaining Class members.

18. Plaintiffs can fairly and adequately protect the interests of all the members of the class they are representing in this action. Plaintiffs' experience and knowledge of the documents and representations of Defendant(s), as well as the damage resulting, entitle them to adequately and fairly represent the class.

19. Plaintiffs have satisfied the three prong "community of interest" requirement in California Code of Civil Procedure Section 382. Specifically, and as set forth above, (a) this action involves predominant common questions of law and fact in that Plaintiffs bring this action on behalf of the approximately 800 member class who were denied the statutory protections of California Business and Professions Code, Chapter 17, and (separately) were defrauded by Defendant(s); (b) Plaintiff's claims and damages are typical of the class Plaintiffs represent in that, as mentioned above, Plaintiffs seek on behalf of themselves and the class members they represent statutory and common law protections and remedies; and (c) Plaintiffs' experience and knowledge of the documents and representations of Defendant(s), as well as the damage resulting, entitle them to adequately and fairly represent the class.

## FACTUAL BACKGROUND

20. As a general factual summary, each of the individual Plaintiffs suffered  damages as a result of entering into contracts with Defendant(s), as described below.  Each of the Class Representatives learned of ADVENT via advertisements created by ADVENT, that offered assistance to the general public (specifically prospective  inventors)  in obtaining legal protection for their inventions, and marketing assistance once legal protection had been obtained.

5

21.   Each Plaintiff subsequently met with employee representatives of Defendant ADVENT in San Diego County. Specifically, Plaintiff Class Representatives HOLSTON and MARRS met with Defendant HEINE, and Plaintiff Class Representatives GARCIA, McCORMICK and JACK met with Defendant MORRELL. At that time, Plaintiffs were given several written advertisements by the afore-said representatives, and were informed that such advertisements were uniformly given to all of Defendant(s) potential clients.

22.   Plaintiffs were informed that Defendants had a long history of successfully representing inventors, placing said inventions on the market, and making their inventor clients money. Upon an initial review of Plaintiffs proposed inventions, Plaintiffs were informed by Defendant(s) that their ideas had a great chance of success, and that Plaintiffs would need to sign a contract in order for further services to be performed.

23.   Plaintiffs were informed by Defendant(s) that the standard policy of Defendant(s) was that Plaintiffs would be required to enter into a "Phase I" Contract, in which an initial "patent search" would be performed, and a "legal opinion" would be provided to Plaintiffs. If the "patent search" showed that the proposed invention was not "covered" by an existing patent, and had a good chance of obtaining a patent, Plaintiffs would be allowed to enter into a "Phase II" contract, in which further services, including a "patent application," and marketing of the proposed product, would be performed. The "Phase II" contract required a separate, and much larger, payment from Plaintiffs.

24.   Plaintiffs signed the "Phase I" contract, and provided a sum of $1,190.00 to Defendant(s). Plaintiffs would thereafter receive a "Legal Protection Report" from Defendant(s). While lengthy, and full of ambiguous language, the "Legal Protection Report" recommended that Plaintiffs proceed further, and file a "patent application," for an extra, and larger, fee. The "Legal Protection Reports" were false and incomplete, in that they were created to foster hope to, and subsequent money from, the "consumes," including each individual Class Representative. While it is not currently alleged that individual Defendants HEINE or MORRELL participated in the creation of the "Legal Protection Reports," both HEINE and MORRELL knew the reports were false and incomplete, prior to their communications with the Class Representatives.

25. Relying on the recommendation and information within the "Legal Protection Report," Plaintiffs were induced to enter into the "Phase II" contract with Defendants. In return for the services promised within the "Phase II" contract, Plaintiffs were required to provide Defendant(s) a sum total of $9,240.00.  Plaintiffs did enter into the "Phase II" contract, and did begin to make the required payments.

26. Defendant(s) failed to perform the contracts as statutorily, contractually and legally required. Plaintiffs and all Class Members have been damaged as a result.

27. While the "Legal Protection Report" provided a small grouping of existing patents that may have impacted Plaintiffs' rights, subsequent investigation by Plaintiffs showed that other patents were so closely related to Plaintiffs' idea that patent protection could not have been obtained. Usually, the other patents were obtained within hours of the start of each Plaintiff's subsequent informal investigation, but were not included, or referenced, within the "Legal Protection Report" provided by the Defendant(s).

28. If the other patents had been disclosed to Plaintiffs at the conclusion of the "Phase I" investigation, Plaintiffs would not have entered into the "Phase II" process. Plaintiffs are informed and believe that Defendant(s) failed to disclose the information in an attempt procure the larger compensation paid by Plaintiffs in the "Phase II" process.

## FIRST CAUSE OF ACTION
## VIOLATION OF CONSUMER LEGAL REMEDIES ACT
### (Class Action - Against ADVENT PRODUCT DEVELOPMENT, INC. and DOES 1-5)

29. Plaintiffs hereby incorporate by reference paragraphs 1 through 28 above, as though fully set forth herein.

30. Plaintiffs and all proposed Class Members are and were  "consumers," as defined pursuant to California Civil Code section 1761(c).

31. The functions Defendant ADVENT promised to perform for the Class Members were "services" as defined by California Civil Code section 1761(b).

32. California Civil Code section 1760 specifically states: "This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such

protection."

33. The California Consumers Legal Remedies Act (Hereinafter "CLRA"), and specifically California Civil Code section 1770(5) states that the following acts are unfair and thus actionable, and provides, in pertinent part, as follows: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Defendant ADVENT violated this section by representing, to the Class Members, that the services provided had approval, characteristics, uses and benefits which the services did not have.

34. The CLRA, and specifically California Civil Code section 1770(7) states that the following acts are unfair and thus actionable, and provides, in pertinent part, as follows: "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." Defendant ADVENT violated this section by representing, to the Class Members, that the services provided were of a particular standard, quality or grade, when they were of another.

35. The CLRA, and specifically California Civil Code section 1770(14) states that the following acts are unfair and thus actionable, and provides, in pertinent part, as follows: "Representing that a transaction confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law." Defendant ADVENT violated this section by representing, to the Class Members, that the transaction between themselves and each of the Class Members involved rights, remedies and obligations which the transaction did not have or involve.

36. The CLRA, and specifically California Civil Code section 1770(16) states that the following acts are unfair and thus actionable, and provides, in pertinent part, as follows: "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Defendant ADVENT violated this section by representing, to the Class Members, that the transaction between them had been supplied in accordance with a previous representation when it had not.

/ / /

37. The CLRA, and specifically California Civil Code section 1770(19) states that the following acts are unfair and thus actionable, and prohibits, in pertinent part, the following: "Inserting an unconscionable provision in a contract." Defendant ADVENT violated this section by inserting into the contracts, signed by the Class Members, multiple unconscionable provisions.

38. At least 35 days prior to the filing of this lawsuit, Plaintiffs provided Defendant ADVENT with Notice and a demand to correct, pursuant to California Civil Code section 1782. Copies and proof of Certified Mailings are attached hereto as Exhibit "A."

39. As a direct result of Defendants' unlawful business acts and practices, Plaintiffs and other members in the class have been damaged in a sum according to proof. Accordingly, Plaintiffs prays on behalf of themselves and other class members for compensatory damages in an amount to be proven.

**SECOND CAUSE OF ACTION**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE**
**(Class Action - Against ADVENT PRODUCT DEVELOPMENT, INC. and DOES 1-5)**

40. Plaintiffs hereby incorporate by reference paragraphs 1 through 39 above, as though fully set forth herein.

41. At all times relevant, Plaintiffs and all Class Members were and are "Customers" as defined by California Business and Professions Code section 22371(b).

42. At all times relevant, Defendant(s) were and are "Invention developers" as defined by California Business and Professions Code section 22371(d).

43. Plaintiffs and all Class Members entered into "Contracts for invention development services" - as defined by California Business and Professions Code section 22371(a) - whereby Defendant(s) were to perform "Invention developments services," as defined by California Business and Professions Code section 22371(e).

44. California Business and Professions Code, Chapter 17 governs,  regulates and controls the performance of any and all services performed by "Invention developers" - as defined by California Business and Professions Code section 22371(d) - within the State of California. Pursuant to California Business and Professions Code section 22370 "the purpose of this chapter is to safeguard the public against fraud, deceit,  imposition, and financial hardship...by

prohibiting or restricting false or misleading advertising, onerous contract terms, harmful financial practices and other unfair, dishonest, deceptive destructive, unscrupulous, fraudulent and discriminatory practices by which the public has been injured..."

45. Throughout the relevant time period, Defendant(s) had a customary pattern and practice in entering into contractual relationships with Customers. To wit, Defendant(s) would solicit each Plaintiff Class Member to enter into a "Phase I" Contract, whereby Defendant(s) would promise to perform a subsequent "patent search" and provide a "legal opinion" for a set fee. As more specifically set forth below, the "Phase I" duties of Defendant(s) were fraudulently represented and improperly performed. However, and regardless of the above, Defendant(s) would thereafter require a separate "Phase II" Contract, with a larger compensation agreement, in return for further services.

46. In soliciting and entering into multiple contracts with the Class Members, and thereafter performing deficiently, Defendant(s) uniformly and consistently violated multiple California statutes, each of which (in an individual sense) have damaged the Plaintiff Class Members. The subject matter of this action both as to factual and legal matters is such that there are questions of law and fact common to the class which predominate over questions affecting only individual members, including for example, and among other issues, the following:

A.    Business and Professions Code section 22372 requires that "every contract for invention development services is subject to the provisions of this chapter." Business and Professions Code section 22373 requires that "each such contract" shall contain certain required language. Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom;

B.    Business and Professions Code section 22374 requires certain language be provided within each and every contract - via a separate cover sheet - between a Customer and Invention developments services. Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom;

C.    Business and Professions Code section 22379 requires certain language be provided within each and every contract between a Customer and Invention developments services.

Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom; and

D.   Business and Professions Code section 22380 requires that "every invention developer who charges a fee or requires any consideration for his invention development services must clearly and conspicuously disclose such fact in every advertisement of such services." Statistically, one hundred percent (100%) of the class members were deprived of this statutory right, and have been damaged therefrom.

47.   As a result of each and every Business and Professions Code violation committed by Defendant(s), Plaintiffs and the Class Members have been damaged.

48.   As mentioned in this Complaint, Plaintiffs are direct victims of Defendants' illegal business acts and practices referenced herein pursuant to Business and Professions Code Section 17204, and have lost money as a result of such practices, and are suing both in their individual capacity and on behalf of other members who share a common or general interest in the damages as a result of the illegal practices of Defendants.

49.   The approximately 800 member class is ascertainable via their experience of Defendants' illegalities.   The members share a community of interest, and an injury in fact, as Defendants have violated various sections of California Business and Professions Code of which the class members were victims, thereby damaging the class members in an amount to be proven. Based on the facts set forth above, it would be impracticable to proceed in individual actions.

50.   Plaintiffs are bringing this action on behalf of an ascertainable class, who share a community of interest, pursuant to Business and Professions Code Section 17203 and Code of Civil Procedure Section 382, who share a common or general interest in the damages as a result of the above-referenced illegal business acts and practices of Defendants.

51.   California Business and Professions Code § 17200 *et seq*., prohibits any unlawful, unfair, or fraudulent business acts or practices.

52.   Plaintiffs' allegations herein are all based upon the business acts and practices of Defendants.

53.   Defendants' acts and practices as described herein above are unlawful, in that they violate the California Business and Professions Code. Defendants' acts and practices as described herein

above are unfair, in that they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. Defendants' acts and practices as described herein above are fraudulent, based upon all the facts set forth within this Complaint.

54. As a direct result of Defendants' unlawful business acts and practices, Plaintiffs and other members in the class have been damaged in a sum according to proof. Accordingly, Plaintiffs pray on behalf of themselves and other class members for restitution and injunctive damages in an amount to be proven.

55. Plaintiffs are informed and believe, and on that basis allege, that the unlawful business practices alleged above are continuing in nature and are widespread practices engaged by Defendants.

56. On behalf of the ascertainable class, Plaintiffs respectfully request an injunction against Defendants to enjoin them from continuing to engage in the illegal conduct alleged herein.

57. On behalf of the ascertainable class, Plaintiffs respectfully request restitution damages in an amount to be proven.

58. Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees. Plaintiffs are presently unaware of the precise amount of these expenses and fees and prays for leave of court to amend this Complaint when the amounts are more fully known.

## THIRD CAUSE OF ACTION
### FRAUD
### (Individual Claim, Plaintiff WATERS Against Defendant ADVENT)

59. Plaintiff WATERS hereby incorporates by reference paragraphs 1 through 58 above, as though fully set forth herein.

60. WATERS first responded to the ADVENT advertisement in April, 2006, and executed two separate contracts with ADVENT in June, 2006. Within the April through June, 2006 time period, Defendant ADVENT - by and through its employees ALPHONSO EILAND and DENISE THURLOW - made multiple affirmative mis-representations and intentional omissions to WATERS in an attempt to secure Plaintiff WATERS' execution of the contracts, and the subsequent financial obligations. Based upon Plaintiff's investigation, individual ADVENT representatives appear to be following a "sales script" prepared by ADVENT. Following the execution of the initial contract, ADVENT made multiple affirmative mis-representations and

intentional omissions to WATERS in an attempt to continue the financial obligations placed upon WATERS. Examples of the affirmative mis-representations include in-person meetings in May, 2006 where EILAND stating that WATERS' proposed invention was not similar to any existing patents, and that WATERS' proposed invention could receive patent protection, when this statement was false, and easily verifiable by an entity of ADVENT's represented expertise. As a specific example, EILAND told WATERS in an in-person meeting that if he entered into a "Phase II" contract with ADVENT, WATERS would receive patent protection for his water temperature gauge. This statement was false at the time ADVENT made it, and ADVENT knew it was false. As a second example, in June, 2006 EILAND informed WATERS during an in-person meeting that they would "showcase" WATERS' invention at trade shows and through direct target mailing. ADVENT never marketed WATERS' invention at trade shows, though direct target mailing, or in any other manner. ADVENT's intentional omissions include the failure to mention other patents that were so closely related to WATERS' idea that patent protection could not have been obtained, within the "Legal Protection Report" provided by ADVENT. ADVENT omitted such material information in an attempt to continue the financial obligations placed upon WATERS by entering into the "Phase II" contract, which WATERS did in fact enter into, incurring financial obligations towards ADVENT).

61.  At the time the mis-representations were made, ADVENT knew they were false. ADVENT further knew the omissions were material and for purposes of inducing WATERS' reliance, to enter into the contracts.

62.  ADVENT intended for WATERS to rely on the mis-representations, and WATERS actually and reasonably did rely on said mis-representations.

63.  As a result of ADVENT's mis-representations and omissions, and WATERS' reliance thereon, WATERS has been damaged, in an amount according to proof.

**FOURTH CAUSE OF ACTION**
**FRAUD**
**(Individual Claim, Plaintiff HOLSTON Against Defendants ADVENT and HEINE)**

64.  Plaintiff HOLSTON hereby incorporates by reference paragraphs 1 through 58 above, as though fully set forth herein.

Z:\Data\6330\pleadings\Pleadings\Second Amended Complaint.wpd

07CV2089(BTM)(LSP)

65.   HOLSTON first responded to the ADVENT advertisement in the June, 2005 time period, and executed two separate contracts with ADVENT in September, 2005. Within the June through September, 2005 time period, Defendants ADVENT (by and through its employee HEINE) made multiple affirmative mis-representations and intentional omissions to HOLSTON in an attempt to secure HOLSTON's execution of the contracts, and the subsequent financial obligations. Based upon Plaintiff's investigation, individual ADVENT representatives appear to be following a "sales script" prepared by ADVENT.  Following the execution of the first operative contract, ADVENT (by and through HEINE) made multiple affirmative mis-representations and omissions to HOLSTON in an attempt to continue the financial obligations placed upon HOLSTON, by having HOLSTON sign a second Contract. Examples of the affirmative mis-representations include HEINE stating - in approximately August, 2005, during an in-person meeting - that HOLSTON's single chair mosquito protection net was not similar to any existing patents, and that HOLSTON's single chair mosquito protection net could receive patent protection, when this statement was false, and easily verifiable by an entity of ADVENT's represented expertise. As a specific example, in September, 2005, during an in-person meeting, HEINE informed HOLSTON that if he entered into a "Phase II" contract with ADVENT, they would "showcase" HOLSTON's single chair mosquito protection net at trade shows, including a trade show in Chicago, and through direct target mailing. ADVENT never marketed HOLSTON's single chair mosquito protection net at trade shows, though direct target mailing, or in any other manner. This statement was false at the time HEINE made it, and HEINE and ADVENT knew it was false, as HEINE and ADVENT had not previously marketed any proposed invention. HEINE and ADVENT made these numerous mis-representations to HOLSTON in an attempt to entice HOLSTON to continue the financial obligations placed upon HOLSTON by entering into the "Phase II" contract, which HOLSTON did in fact enter into, incurring financial obligations towards ADVENT. Following the execution of the contracts, and during the October, 2005 through May, 2006 time period, HEINE made similar representations - over phone calls between HEINE and HOLSTON - that ADVENT would continue to support HOLSTON's attempts to secure a patent. These representations were false at the time HEINE made them, HEINE knew

they were false when he made them, and HOLSTON relied upon such representations.

66. At the time the mis-representations were made, HEINE and ADVENT knew they were false. HEINE and ADVENT further knew the omissions were material and for purposes of inducing HOLSTON's reliance, to enter into the contracts.

67. HEINE and ADVENT intended for HOLSTON to rely on the mis-representations, and HOLSTON actually and reasonably did rely on said mis-representations.

68. As a result of HEINE and ADVENT's mis-representations and omissions, and HOLSTON's reliance thereon, HOLSTON has been damaged, in an amount according to proof.

### FIFTH CAUSE OF ACTION
### FRAUD
**(Individual Claim, Plaintiff MARRS Against Defendants ADVENT and HEINE)**

69. Plaintiff MARRS hereby incorporates by reference paragraphs 1 through 58 above, as though fully set forth herein.

70 In approximately March, 2007, MARRS approached ADVENT with the idea to patent a motion sensor toilet paper dispenser for residential use.  During an in-person meeting, HEINE informed MARRS that this was an idea that could be patented, marketed and sold without difficulty.  At no point did HEINE or ADVENT inform MARRS that his proposed invention was too similar in design to the motion sensor paper towel dispenser that it would be impossible to obtain a patent.    MARRS thereafter made payments to HEINE and ADVENT based on their representations that they would patent, market and sell his invention.

71. In the March through June, 2007, HEINE and ADVENT made multiple affirmative mis-representations and intentional omissions to MARRS, during in-person meetings - in an attempt to secure MARRS' execution of the contracts, and the subsequent financial obligations. Based upon Plaintiff's investigation, individual ADVENT representatives appear to be following a "sales script" prepared by ADVENT. Following the execution of the initial contract, HEINE made multiple affirmative mis-representations and omissions to MARRS in an attempt to have MARRS agree to a second Contract. Examples of the affirmative mis-representations include stating that MARRS' motion sensor toilet paper dispenser was not similar to any existing patents, and that MARRS' proposed invention could receive patent protection. As a specific example,

HEINE and ADVENT told MARRS that if he entered into a "Phase II" contract with ADVENT, MARRS would receive patent protection for his motion sensor toilet paper dispenser. This statement was false at the time HEINE and ADVENT made it, and HEINE and ADVENT knew it was false. As a second example, HEINE and ADVENT informed MARRS that they would "showcase" MARRS' motion sensor toilet paper dispenser at trade shows and through direct target mailing. HEINE and ADVENT never marketed MARRS' motion sensor toilet paper dispenser at trade shows, though direct target mailing, or in any other manner. HEINE and ADVENT's intentional omissions include the failure to mention other patents that were so closely related to MARRS' idea that patent protection could not have been obtained, within the "Legal Protection Report" provided by the HEINE and ADVENT. HEINE and ADVENT omitted such material information from the "Phase I" Contract and the "Legal Protection Report" in an attempt to continue the financial obligations placed upon MARRS by entering into the "Phase II" contract, which MARRS did in fact enter into, incurring financial obligations towards HEINE and ADVENT.

72. At the time the mis-representations were made, HEINE and ADVENT knew they were false. HEINE and ADVENT further knew the omissions were material and for purposes of inducing MARRS' reliance, to enter into the contracts.

73. HEINE and ADVENT intended for MARRS to rely on the mis-representations, and MARRS actually and reasonably did rely on said mis-representations.

74. As a result of HEINE and ADVENT's mis-representations and omissions, and MARRS' reliance thereon, MARRS has been damaged, in an amount according to proof.

### SIXTH CAUSE OF ACTION
### FRAUD
### (Individual Claim, Plaintiff GARCIA Against Defendants ADVENT and MORRELL)

75. GARCIA hereby incorporates by reference paragraphs 1 through 58 above, as though fully set forth herein.

76. From approximately December, 2005 though June, 2006, both before and during the execution of the operative contracts, MORRELL and ADVENT made multiple affirmative mis-representations and intentional omissions to GARCIA in an attempt to secure GARCIA's

execution of the contracts, and the subsequent financial obligations. Based upon Plaintiff's investigation, individual ADVENT representatives appear to be following a "sales script" prepared by ADVENT. In approximately March, 2006, during an in-person meeting, MORRELL and ADVENT made multiple affirmative mis-representations and omissions to GARCIA in an attempt to continue the financial obligations placed upon GARCIA. Examples of the affirmative mis-representations include Defendant MORRELL personally stating that GARCIA's magnetized gas cap was not similar to any existing patents, and that GARCIA's magnetized gas cap could receive patent protection. As a specific example, during an in-person meeting, MORRELL and ADVENT told GARCIA that if he entered into a "Phase II" contract with ADVENT, GARCIA would receive patent protection for his magnetized gas cap.  This statement was false at the time MORELL and ADVENT made it, and MORRELL and ADVENT knew it was false. As a second example, MORRELL and ADVENT informed GARCIA that they would "showcase" GARCIA's magnetized gas cap at trade shows and through direct target mailing. MORRELL and ADVENT never marketed GARCIA's magnetized gas cap at trade shows, though direct target mailing, or in any other manner. MORRELL and ADVENT's intentional omissions include the failure to mention other patents that were so closely related to GARCIA's idea that patent protection could not have been obtained, within the "Legal Protection Report" provided by MORRELL and ADVENT. MORRELL and ADVENT omitted such material information from the "Phase I" Contract and the "Legal Protection Report" in an attempt to continue the financial obligations placed upon GARCIA by entering into the "Phase II" contract, which GARCIA did in fact enter into, incurring financial obligations towards MORRELL and ADVENT.

77. At the time the mis-representations were made, MORRELL and ADVENT knew they were false. MORRELL and ADVENT further knew the omissions were material and for purposes of inducing GARCIA's reliance, to enter into the contracts.

78. MORRELL and ADVENT intended for GARCIA to rely on the mis-representations, and GARCIA actually and reasonably did rely on said mis-representations.

/ / /

79. As a result of MORRELL and ADVENT's mis-representations and omissions, and GARCIA's

reliance thereon, GARCIA has been damaged, in an amount according to proof.

### SEVENTH CAUSE OF ACTION
### FRAUD
### (Individual Claim, Plaintiff McCORMICK Against Defendants ADVENT and MORRELL)

80.   McCORMICK hereby incorporates by reference paragraphs 1 through 58 above, as though fully set forth herein.

81.   From approximately August through December, 2004, both before and during the execution of the operative contracts, MORRELL and ADVENT made multiple affirmative mis-representations and intentional omissions to McCORMICK in an attempt to secure McCORMICK's execution of the contracts, and the subsequent financial obligations. Based upon Plaintiff's investigation, individual ADVENT representatives appear to be following a "sales script" prepared by ADVENT. During in-person meetings, MORRELL and ADVENT made multiple affirmative mis-representations and omissions to McCORMICK in an attempt to continue the financial obligations placed upon McCORMICK. As a specific example of the affirmative mis-representations, during an in-person meeting, MORRELL and ADVENT informed McCORMICK that once he entered into a "Phase II" contract, his folding bench/work table would be patented and marketed directly to construction developers.  McCORMICK entered into the "Phase II" contract and paid the applicable fees, and no such patent or marketing took place. include stating that McCORMICK's proposed inventions were not similar to any existing patents, and that McCORMICK's folding bench/work table could receive patent protection. MORRELL and ADVENT's intentional omissions include the failure to mention other patents that were so closely related to McCORMICK's idea that patent protection could not have been obtained, within the "Legal Protection Report" provided by the MORRELL and ADVENT. MORRELL and ADVENT omitted such material information from the "Phase I" Contract and the "Legal Protection Report" in an attempt to continue the financial obligations placed upon McCORMICK by entering into the "Phase II" contract, which McCORMICK did in fact enter into, incurring financial obligations towards MORRELL and ADVENT.

/ / /

82.   At the time the mis-representations were made, MORRELL and ADVENT knew they were false.

MORRELL and ADVENT further knew the omissions were material and for purposes of inducing McCORMICK's reliance, to enter into the contracts.

83.   MORRELL and ADVENT intended for McCORMICK to rely on the mis-representations, and McCORMICK actually and reasonably did rely on said mis-representations.

84.   As a result of MORRELL and ADVENT's mis-representations and omissions, and McCORMICK's reliance thereon, McCORMICK has been damaged, in an amount according to proof.

**SIXTH CAUSE OF ACTION**
**FRAUD**
**(Individual Claim, Plaintiff JACK Against Defendants ADVENT and MORRELL)**

85.   JACK hereby incorporates by reference paragraphs 1 through 58 above, as though fully set forth herein.

86.   In approximately October, 2004, JACK met with an unknown representative of ADVENT on several occasions regarding her "ear protect" device.  In approximately July, 2006, JACK again met with ADVENT, by and through its employee (and Defendant) MORRELL. During the 2006 meeting, MORRELL personally informed JACK that she had a great idea and that they could definitely patent, market, and sell JACK's "ear protect" device.  During this in-person meeting, MORRELL further confirmed that there would definitely be interest in her invention in the beauty industry.  These assurances were reiterated at the subsequent meetings between JACK and MORRELL, said meetings taking place in the fall of 2006.  Following a third meeting, and in reliance on MORRELL's assurances, JACK agreed to pay the fees to MORRELL and ADVENT to have her product patented, marketed and sold.  JACK is informed and believes that the "ear protect" device was never patented or marketed by MORRELL and ADVENT.  Subsequent to making payments to MORRELL and ADVENT, in or about February 2008, JACK found an exact mirror image of her "ear protect" device in beauty supply stores and catalogs.

87.   Both before and during the execution of the initial contract in approximately September, 2006, ADVENT (by and through its employee MORRELL) made multiple affirmative mis-representations and intentional omissions to JACK in an attempt to secure JACK's execution of the contracts, and the subsequent financial obligations. Based upon Plaintiff's investigation,

individual ADVENT representatives - including MORRELL - appear to be following a "sales script" prepared by ADVENT. Following the execution of the operative contract, from 2006 through September, 2008, ADVENT (by and through MORRELL) made multiple affirmative mis-representations and omissions to JACK in an attempt to continue the financial obligations placed upon the JACK. Examples of the affirmative mis-representations include MORRELL - during an in-person meeting - stating that JACK's "ear protect" device was not similar to any existing patents, and that JACK's proposed inventions could receive patent protection. Specifically, MORRELL and ADVENT repeatedly told JACK that if she entered into the "Phase II" contract, JACK would receive patent protection. Due to her concern about these representations, JACK made several additional in-person visits to MORRELL and ADVENT, and each time JACK was personally reassured by MORRELL that her "ear protect" device would receive patent protection after entering into the "Phase II" contract. As a second example, MORRELL and ADVENT personally informed JACK that they would market JACK's "ear protect" device to beauty supply stores after she entered into the "Phase II" contract and paid her fees. No such marketing took place. MORRELL and ADVENT's intentional omissions include the failure to mention other patents that were so closely related to JACK's idea that patent protection could not have been obtained, within the "Legal Protection Report" provided by MORRELL and ADVENT. MORRELL and ADVENT omitted such material information from the "Phase I" Contract and the "Legal Protection Report" in an attempt to continue the financial obligations placed upon JACK by entering into the "Phase II" contract, which JACK did in fact enter into, incurring financial obligations towards MORRELL and ADVENT.

88. At the time the mis-representations were made, MORRELL and ADVENT knew they were false. MORRELL and ADVENT further knew the omissions were material and for purposes of inducing JACK's reliance, to enter into the contracts.

89. MORRELL and ADVENT intended for JACK to rely on the mis-representations, and JACK actually and reasonably did rely on said mis-representations.

/ / /

90. As a result of MORRELL and ADVENT's mis-representations and omissions, and JACK's

reliance thereon, JACK has been damaged, in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs MATTHEW WATERS, JAMES HOLSTON, WILLIAM MARRS, ARTHUR GARCIA, DENNIS McCORMICK and VERONICA JACK on their own behalf and on behalf of the members of the class and the general public, prays for judgment as follows:

1. For an order certifying the proposed class;

2. For compensatory damages in an amount to be proven;

3. On the First Cause of Action, (a) Actual Damages, (b) an order enjoining the illegal methods acts and practices, and (c) Restitution of property. Additionally, all "senior citizens" and "disabled persons" as defined within Civil Code section 1761 seek an additional Five Thousand Dollars ($5,000.00), as allowable under Civil Code section 1780(b);

4. For an amount of Three Thousand Dollars ($3,000.00), or treble the actual damages, per Class Member and/or 17200 participant, pursuant to Business & Professions Code Section 22386 et seq.;

5. On behalf of the ascertainable class, for a permanent injunction against Defendants restraining, preventing, and enjoining Defendants from engaging in the illegal practices alleged above, on behalf of the Section 17200 claimants who share a common or general interest;

6. On behalf of the ascertainable class, for restitution damages on behalf of the Section 17200 claimants who share a common or general interest;

7. For an award of interest, including prejudgement interest;

8. For an award of attorneys' fees and costs pursuant to all available statutes and remedies, including Civil Code section 1780(d) and Business and Professions Code section 22386;

9. For an award of punitive and exemplary damages where permissible; and

/ / /

/ / /

/ / /

/ / /

10.   For such other relief as the court deems just and proper.


Dated: February 24, 2010                    **SULLIVAN & CHRISTIANI, LLP**

                                            */s/* Jason L. Nienberg

                                            _____
                                            William B. Sullivan
                                            Jason L. Nienberg
                                            Attorneys for Plaintiff MATTHEW WATERS,
                                            JAMES   HOLSTON,   WILLIAM   MARRS,
                                            ARTHUR GARCIA,  and VERONICA JACK,
                                            individually, and on behalf of other members of
                                            the general public similarly situated