1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MATTHEW WATERS, JAMES
HOLSTON, WILLIAM MARRS, ARTHUR
GARCIA, DENNIS McCORMICK and
VERONICA JACK, individually and on
behalf of other members of the general
public similarly situated,

Plaintiffs,

v.

ADVENT PRODUCT DEVELOPMENT,
INC., a South Carolina Corporation,
DAVID HEINE, an Individual, WILLIAM
T. MORRELL, an Individual and DOES 1
through 50, inclusive,

Defendants.

CASE NO. 07cv2089 BTM(NLS)

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
CLASS CERTIFICATION**

Plaintiffs have filed a motion for class certification on their claims for (1) violation of California's "Invention Development Services Contracts" laws, Cal. Bus. & Prof. Code §§ 22370, et seq.; and (2) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq. For the reasons discussed below, Plaintiffs' motion for class certification is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The named plaintiffs ("Plaintiffs") suffered damages as a result of entering into contracts with Defendant Advent Product Development, Inc. ("Advent"). (SAC ¶ 20.) Advent

1

07cv2089 BTM(LSP)

advertised that it offered assistance to prospective inventors in connection with obtaining legal protection for their inventions and marketing the inventions once legal protection had been obtained.  (SAC ¶ 20.)  Each Plaintiff had an invention and met with an employee representative of Advent to discuss utilizing Advent's services.  (SAC ¶ 21.)

Plaintiffs were informed that the standard procedure was for the inventor to enter into a "Phase I" contract, which provided that Advent would conduct an initial patent search and would issue a legal opinion.  (SAC ¶ 23.)  If the "patent search" showed that the proposed invention was not "covered" by an existing patent and had a good chance of obtaining a patent, the inventor would then be allowed to enter into a "Phase II" contract for further services in connection with applying for a patent and marketing the product.  (Id.)  The Phase II contract required a separate and much larger payment.  (Id.)

Each Plaintiff signed the Phase I contract and paid Advent a sum of $1,190.00.  (SAC ¶ 24.) Thereafter, Plaintiffs received a "Legal Protection Report," which recommended that Plaintiffs proceed further with the process.  (Id.) Relying on the Legal Protection Report, Plaintiffs were induced into entering into the "Phase II" contract, which obligated each of them to pay Advent a sum of $9,240.00.  (SAC ¶ 25.)

Plaintiffs allege that although the Legal Protection Report revealed a small grouping of existing patents that may have impacted Plaintiffs' rights, subsequent investigation by Plaintiffs showed that other patents, which were easily found, were so closely related to Plaintiffs' inventions that patent protection could not have been obtained.  (SAC ¶ 27.) Plaintiffs allege that Defendants purposefully failed to disclose pertinent prior patents in an attempt to induce Plaintiffs into entering into the "Phase II" contract and obtain the larger payment.  (SAC ¶ 28.)

The SAC asserts a class action claim against Advent for violation of the CLRA, a class action claim against Advent for violation of Cal. Bus. & Prof. Code § 17200 and §§ 22372, 22373, 22374, 22379, 22380, and individual fraud claims.

## II.  DISCUSSION

Plaintiffs move for class certification on their claims for violation of Cal. Bus. & Prof. Code §§ 22370, et seq., and violation of the CLRA.  Plaintiffs seek certification of the following class:

> All persons who signed 'Phase I' contracts with Advent Product Development, Inc. within the  state of California at any time between September 18, 2003 and the date trial commences in this action.

Plaintiffs also seek certification of the following subclass:

> All persons who signed 'Phase II' contracts with advent Product Development, Inc. within the state of California at any time between September 18, 2003 and the date trial commences in this action.

For the reasons discussed below, the Court finds that certification of the proposed class and subclass is appropriate as to the Cal. Bus. & Prof. Code claim but is not appropriate  as to the CLRA claim.

### A.  Rule 23(a) Requirements

With respect to the Cal. Bus. & Prof. Code claim, Plaintiffs seek certification under Fed. R. Civ. P. 23.  Under Rule 23, the party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met.  Dukes v.Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007). The requirements of Rule 23(a) are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1.  Numerosity

The numerosity requirement "requires examination of the specific facts of each case and imposes no absolute limitations."  General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980).  Some courts have held that numerosity is presumed where the

07cv2089 BTM(LSP)

plaintiff class contains forty or more members.  See, e.g., Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

According to information provided by Advent, there are approximately 1400 individuals who qualify as class members and approximately 700 who qualify as subclass members. (Notice of Lodgement, Ex. 7.)   The Court concludes that Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law and fact common to the class." "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "The commonality test is qualitative rather than quantitative - one significant issue common to the class may be sufficient to warrant certification."  Dukes, 509 F.3d at 1177.

Both common questions of law and fact exist with respect to the Bus. & Prof. Code claim.  All of the putative class members entered into a Phase I contract with Advent.  The putative subclass members also entered into a Phase II contract.  The contracts are forms, and based on a random sampling of contracts, it appears that there is no variation in the contract language.  (Sullivan Decl. ¶¶ 12-13.)  Plaintiffs allege that all of the contracts fail to include language required by Bus. & Prof. Code §§ 22370, et seq.  Accordingly, the putative class/subclass claims share a common core of facts as well as common legal issues.

### 3. Typicality

Representative claims are "typical" if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other

4

class members have been injured by the same course of conduct." <u>Hanon v. Dataproducts</u> <u>Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted).

Plaintiffs' claims are typical of the claims of the class.  Plaintiffs entered into the form Phase I and Phase II contracts and allege that the contracts failed to include language required by Cal. Bus. & Prof. Code §§ 22370, <u>et</u> <u>seq.</u>

### 4. Adequacy of Representation

To determine adequacy of representation, courts consider (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class.  <u>Hanlon</u>, 15 F.3d at 1020.

There do not appear to be any conflicts of interest or reasons why Plaintiffs and their counsel would not vigorously prosecute this action on behalf of the class.  In addition, Plaintiffs' counsel appears to be experienced in the areas of consumer litigation and class actions.  (Sullivan Decl. ¶¶ 16-24.)  Therefore, the Court finds that Plaintiffs and Plaintiffs' counsel would adequately represent the proposed class.

## B. Rule 23(b) Requirements

Plaintiffs contend that certification is appropriate under Rule 23(b)(1), (b)(2), and (b)(3).  The Court does not agree that Plaintiffs satisfy the requirements of Rule 23(b)(1) and (b)(2), and certifies the class and subclass under Rule 23(b)(3) only.

### 1. Rule 23(b)(1)

Rule 23(b)(1) permits maintenance of a class action if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that,

5

as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Rule 23(b)(1)(A) authorizes class actions "to eliminate the possibility of adjudications in which the defendant will be required to follow inconsistent courses of continuing conduct." La Mar v. H&B Novelty & Loan Co., 489 F.2d 461, 466 (9th Cir. 1973). "This danger exists in those situations in which the defendant by reason of legal relations involved can not as a practical matter pursue two different courses of conduct." Id. Examples of such situations include actions to declare bond issues invalid or to fix the rights and duties of a riparian owner. Id. The Court fails to see how this case gives rise to a danger that Advent will be required to pursue two different courses of conduct in the absence of class certification.

Rule 23(b)(1)(B) is also inapplicable. Rule 23(b)(1)(B) focuses on "the effect of an action on behalf of an individual on the interests of those who have rights similar to those of the individual bringing suit . . . . If the individual action inescapably will alter the substance of the rights of others having similar claims . . . the situation falls within Rule 23(b)(1)(B). La Mar, 489 F.2d at 466-67. Here, the outcome of Plaintiffs' individual actions would not inescapably alter the rights of others similarly situated, who would be free to pursue their own claims against Defendants.

### 2. Rule 23(b)(2)

Plaintiffs also request certification under Rule 23(b)(2). The Court denies this request.

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiffs argue that Advent has refused to cease its illegal acts, forcing Plaintiffs to seek a permanent injunction restraining Defendants from violating the applicable laws.

The Ninth Circuit has held that to be certified under Rule 23(b)(2), a class must seek only monetary damages that are not "superior in strength, influence, or authority" to injunctive and declaratory relief. Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 616 (9th Cir.

07cv2089 BTM(LSP)

1   2010).   To determine whether monetary relief predominates over injunctive or declaratory

2   relief, a district court "should consider, on a case-by-case basis, the objective 'effect of the

3   relief sought' on the litigation."  Id. at 617.

4          The Court concludes that monetary relief predominates in this case.   The

5   predominance test "turns on the primary goal and nature of the litigation."  Dukes, 603 F.3d

6   at 618.  Here, the putative class will not derive much benefit from an injunction restraining

7   Defendants from violating the applicable laws, because the putative class members are not

8   in an ongoing relationship with Defendants.   The real benefit to the class members lies in

9   the monetary relief.  The requested monetary relief includes restitution of the fees paid in

10  addition to statutory damages pursuant to Cal. Bus. & Prof. Code § 22386, consisting of

11  $3,000 or treble the actual damages per class member.

12         Because monetary relief predominates over injunctive relief in this case, the Court

13  denies Plaintiffs' motion for certification under Rule 23(b)(2).

14

15         **3.  Rule 23(b)(3)**

16         Rule 23(b)(3) applies if "the court finds that the questions of law or fact common to

17  class members predominate over any questions affecting only individual members, and that

18  a class action is superior to other available methods for fairly and efficiently adjudicating the

19  controversy."   Pertinent matters to consider include (1) the class members' interests in

20  individually controlling the prosecution or defense of separate actions; (2) the extent and

21  nature of any litigation concerning the controversy already begun by or against class

22  members; (3) the desirability or undesirability of concentrating the litigation of the claims in

23  the particular forum; and (4) the likely difficulties in managing a class.  Fed. R. Civ. P.

24  23(b)(3).

25         The predominance inquiry "tests whether proposed classes are sufficiently cohesive

26  to warrant adjudication by representation" and "focuses on the relationship between the

27  common and individual issues."  Hanlon, 150 F.3d at 1022 (internal quotation marks and

28  citation omitted).  "When common questions represent a significant aspect of the case and

they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 3d § 1778. When one or more of the central issues in the action are common to the class and can be deemed to predominate, certification may be proper under Rule 23(b)(3) even though other important matters, such as damages or affirmative defenses, will have to be tried separately. <u>Id.</u>

As discussed above in connection with the commonality requirement, the central factual and legal issues underlying Plaintiffs' Cal. Bus. & Prof. Code claim are common to the class. Plaintiffs and the putative class members entered into form contracts with Advent. Plaintiffs allege that all of these contracts suffer from the same defects, i.e., the omission of language required by Cal. Civ. Code §§ 22370, <u>et seq.</u>. These common and central issues predominate over any questions affecting only individual members.

The Court also finds that with respect to the Cal. Bus. & Prof. Code claim, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." There is no evidence that any other members of the potential class have filed or expressed a desire to file their own lawsuits. The Court concludes that it would promote judicial efficiency and ensure consistency of rulings to litigate the issue of whether the form contracts fail to include language required by Cal. Civ. Code §§ 22370, <u>et seq.</u>, in one class action as opposed to multiple individual suits. Furthermore, it appears that individual recovery would be relatively small, raising a question as to whether plaintiffs would be motivated and/or financially able to pursue individual actions. The Court is not aware of likely difficulties in managing the class.

Accordingly, the Court grants Plaintiffs' motion to certify the class and subclass as to the Cal. Bus. & Prof. Code claim under Rule 23(b)(3).

## C. Certification Under the CLRA

Plaintiffs seek certification on their CLRA claim under the CLRA, which provides:

(a) Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers

8

similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.

(b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:

(1) It is impracticable to bring all members of the class before the court.

(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.

(4) The representative plaintiffs will fairly and adequately protect the interests of the class.

Cal. Civ. Code § 1781.

The Court denies certification under the CLRA because Plaintiffs have not shown that there are CLRA claims common to the putative class/subclass.   Realizing that they cannot premise a class claim on Advent's failure to perform the contract(s) as promised because such claims would require individualized findings of fact, Plaintiffs attempt to build their CLRA claims on Advent's failure to obtain a bond as required by Cal. Bus. & Prof. Code § 22389, failure to register do business with California's Secretary of State, and failure to register an agent for service of process.  Plaintiffs allege that Advent's failure to comply with these business requirements violated the following CLRA provisions, which prohibit:

- Misrepresenting the source, sponsorship, approval, or certification of goods or services.  Cal. Civ. Code § 1770(a)(2).

- Using deceptive representations or designations of geographic origin in connection with goods or services.  Cal. Civ. Code § 1770(a)(4).

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.  Cal. Civ. Code § 1770(a)(5).

- Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

1      Cal. Civ. Code § 1770(a)(7).

2      •      Advertising goods or services with intent not to sell them as advertised.  Cal.

3      Civ. Code § 1770(a)(9).

4      •      Representing that a transaction confers or involves rights, remedies, or

5      obligations which it does not have or involve, or which are prohibited by law.

6      Cal. Civ. Code § 1770(a)(14).

7      However, Advent's failure to comply with business requirements does not constitute

8  a violation of the above-quoted provisions, which focus on representations regarding the

9  nature, quality, origin, sponsorship, or affiliation of *services*.  Whether Advent was a business

10 in good standing in California and/or was compliant with all business requirements does not

11 bear upon the issue of whether Advent made misleading representations regarding its

12 *services*.   Although Advent's failure to comply with business requirements might form the

13 basis of a § 17200 claim, the Court will not distort the meaning of the CLRA to encompass

14 Plaintiffs' claims.

15      Plaintiffs also contend that Advent violated Cal. Civ. Code § 1770(a)(19), which

16 prohibits "[i]nserting an unconscionable provision in the contract." Plaintiffs claim that Advent

17 violated § 1770(a)(19) by inserting in the Phase II contract a forum selection clause

18 designating South Carolina as the venue for any action.  In its order dated June 26, 2008

19 [Docket # 21], the Court declined to enforce the forum selection clause because its

20 enforcement would violate a strong public policy of California.  However, unenforceability of

21 a forum selection clause is not the same thing as "unconscionability."   A contract clause is

22 unconscionable if it creates "overly harsh" or "one-sided" results as to "shock the

23 conscience." Belton v. Comcast Cable Holdings, LLC, 151 Cal. App. 4th 1224, 1245 (2007).

24 The forum selection clause does not satisfy this definition.  Furthermore, it seems that no

25 damages were suffered as a result of the inclusion of the forum selection clause, especially

26 since the Court refused to enforce the clause.

27      Plaintiffs have failed to establish CLRA claims common to the putative class/subclass.

28 Therefore, the Court denies Plaintiffs' motion for class certification under the CLRA.

10

### III.  CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Class Certification is **GRANTED IN PART** and **DENIED IN PART**.  Pursuant to Rule 23(b)(3), the Court certifies the following class with respect to Plaintiffs' claim for violation of Cal. Bus. & Prof. Code §§ 22370, et seq.:

> All persons who signed 'Phase I' contracts with Advent Product Development, Inc. within the state of California at any time between September 18, 2003 and the date trial commences in this action.

The Court also certifies the following subclass with respect to Plaintiffs' claim for violation of Cal. Bus. & Prof. Code §§ 22370, et seq.:

> All persons who signed 'Phase II' contracts with Advent Product Development, Inc. within the state of California at any time between September 18, 2003 and the date trial commences in this action.

The Court **DENIES** Plaintiffs' motion for class certification under the CLRA.

The Court appoints the named Plaintiffs as class representatives and appoints Sullivan & Christiani LLP as class counsel.

**IT IS SO ORDERED.**

DATED:  February 22, 2011

Honorable Barry Ted Moskowitz
United States District Judge

07cv2089 BTM(LSP)